# EXHIBIT 1

 CT Corporation

**Service of Process Transmittal**
02/03/2021
CT Log Number 538993534

TO: David Greenbaum
Nuance Communications, Inc.
1 WAYSIDE RD
BURLINGTON, MA 01803-4609

RE: **Process Served in Illinois**

FOR: Nuance Communications, Inc. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | MICHELLE CAMPANA, PLTF. vs. NUANCE COMMUNICATIONS, INC, DFT. |
| **DOCUMENT(S) SERVED:** | - |
| **COURT/AGENCY:** | None Specified<br>Case # 2021CH374 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Chicago, IL |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 02/03/2021 at 03:08 |
| **JURISDICTION SERVED :** | Illinois |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 02/03/2021, Expected Purge Date: 02/08/2021 |
| | Image SOP |
| | Email Notification, David Greenbaum david.greenbaum@nuance.com |
| | Email Notification, Katie Marble kathryn.marble@nuance.com |
| | Email Notification, Jackie Reppucci jacquelyn.reppucci@nuance.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>208 South LaSalle Street<br>Suite 814<br>Chicago, IL 60604<br>866-401-8252<br>EastTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**  Wed, Feb 3, 2021

**Server Name:**  Andrew Raphael

| Entity Served | NUANCE COMMUNICATIONS, INC. |
|---------------|------------------------------|
| Agent Name | C T CORPORATION SYSTEM |
| Case Number | 2021CH374 |
| Jurisdiction | IL |



Return Date: No return date scheduled
Hearing Date: 5/26/2021 10:00 AM - 10:00 AM
Courtroom Number: N/A
Location: District 1 Court
        Cook County, IL

FILED
1/27/2021 11:13 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH00374

11987389

FILED DATE: 1/27/2021 11:13 AM   2021CH00374

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| Summons - Alias Summons | (08/01/18) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

#4706

MICHELLE CAMPANA

                  (Name all parties)

v.

NUANCE COMMUNICATIONS, INC.

c/o CT Corporation System
208 S. LaSalle St, Suite 814
Chicago, IL 60604

Case No.   2021-CH-00374

☑ **SUMMONS**   ☐ **ALIAS SUMMONS**

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 1 of 3

**Summons - Alias Summons** (08/01/18) CCG 0001 B

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

Atty. No.: 56618

Atty Name: McGuire Law, P.C.

Atty. for: Plaintiff

Address: 55 W. Wacker Dr., 9th Fl.

City: Chicago

State: IL     Zip: 60601

Telephone: (312) 893-7002

Primary Email: eturin@mcgpc.com

Witness: _____

1/27/2021 11:13 AM IRIS Y. MARTINEZ

DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with
Defendant or other person)

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 2 of 3

FILED DATE: 1/27/2021 11:13 AM   2021CH00374

FILED DATE: 1/27/2021 11:13 AM   2021CH00374

# CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

○ Richard J Daley Center
50 W Washington
Chicago, IL 60602

○ District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

○ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

○ District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

○ District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

○ District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

○ Domestic Violence Court
555 W Harrison
Chicago, IL 60607

○ Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

○ Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

## Daley Center Divisions/Departments

○ Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

◉ Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

Return Date: No return date scheduled
Hearing Date: 5/26/2021 9:30 AM - 9:30 AM
Courtroom Number: 2308
Location: District 1 Court
  Cook County, IL

FILED DATE: 1/26/2021 2:34 PM   2021CH00374

FILED
1/26/2021 2:34 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH00374

11975810

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

MICHELLE CAMPANA, individually and on behalf of similarly situated individuals, )
)
)
)

*Plaintiff*, )
)

v. )
)

NUANCE COMMUNICATIONS, INC., a Massachusetts Corporation. )
)
)

*Defendant.* )

No. **2021CH00374**

Hon.

**Jury Trial Demanded**

## CLASS ACTION COMPLAINT

Plaintiff Michelle Campana ("Plaintiff"), individually and on behalf of other similarly situated individuals, brings this Class Action Complaint against Defendant Nuance Communications, Inc. ("Nuance") for violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA"), and to obtain redress for all persons injured by Defendant's conduct. Plaintiff alleges as follows based personal on knowledge as to her own acts and experiences, and as to all other matters, upon information and belief, including an investigation conducted by her attorneys.

## INTRODUCTION

1.     Plaintiff seeks to represent a class of individuals who made one or more phone calls to entities who use automated interactive customer service phone software offered by Nuance Communications, Inc., and had their unique, biometric voiceprints collected and used without their consent or authorization.

2.     Plaintiff and the other members of the putative class have suffered a concrete injury resulting from their voiceprint biometrics being collected, disseminated, and used for profit

FILED DATE: 1/26/2021 2:34 PM    2021CH00374

without their knowledge or consent, thus materially decreasing the security of this intrinsically inalterable information, and substantially increasing the likelihood that they will suffer as victims of fraud and/or identity theft in the future.

3.     On behalf of herself and the proposed Class defined below, Plaintiff seeks an injunction requiring Defendant to comply with BIPA, as well as an award of statutory damages to the Class, together with costs and reasonable attorneys' fees.

## PARTIES

4.     At all relevant times, Plaintiff Michelle Campana has been a resident and a citizen of the state of Illinois.

5.     Defendant Nuance Communications, Inc. is a Delaware company that conducts substantial business throughout Illinois, including in Cook County, and is registered with and authorized by the Illinois Secretary of State to transact business in Cook County, Illinois.

## JURISDICTION AND VENUE

6.     This Court may assert personal jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 in accordance with the Illinois Constitution and the Constitution of the United States, because Defendant is doing business within this State and because Plaintiff's claims arise out of Defendant's unlawful in-state actions, as Defendant captured, collected, stored, used and profited from Plaintiff's biometric identifiers and/or biometric information in this State.

7.     Venue is proper in Cook County pursuant to 735 ILCS 5/2-101, because Defendant is doing business in Cook County and thus resides there under § 2-102.

FILED DATE: 1/26/2021 2:34 PM   2021CH00374

## THE BIOMETRIC INFORMATION PROTECTION ACT

8.      "Biometrics" refers to a "biology-based set[s] of measurements." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017). Specifically, "biometrics" are "a set of measurements of a specified physical component (eye, finger, voice, hand, face)." *Id.* at 1296.

9.      BIPA was enacted in 2008 in order to safeguard individuals' biometrics as the result of the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276. BIPA is codified as Act 14 in Chapter 740 of the Illinois Compiled Statutes.

10.     As set forth in BIPA, biologically unique identifiers, such as a person's unique voiceprint, cannot be changed. 740 ILCS 14/5(c). The inalterable nature of biologically unique identifiers presents a heightened risk when an individual's biometrics are not protected in a secure and transparent fashion. 740 ILCS 14/5(d)–(g).

11.     As a result of the need for enhanced protection of biometrics, BIPA imposes various requirements on private entities that collect or maintain individuals' biometrics, including voiceprints.

12.     Among other things, BIPA seeks to regulate "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g). BIPA thus applies to entities that interact with two forms of biometrics: biometric "identifiers" and biometric "information." 740 ILCS 14/15(a)–(e).

13.     BIPA defines a "biometric identifier" as any personal feature that is unique to an individual, including fingerprints, voiceprints, and hand geometry. "Biometric identifiers" are physiological, as opposed to behavioral, characteristics. BIPA's text provides a non-exclusive list

3

FILED DATE: 1/26/2021 2:34 PM  2021CH00374

of protected "biometric identifiers," including "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.

14.     "Biometric information" is defined by BIPA as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.* This definition helps ensure that information based on a biometric identifier that can be used to identify a person is covered by BIPA. Collectively, biometric identifiers and biometric information are known as "biometrics."

15.     In BIPA, the Illinois General Assembly identified four distinct activities that may subject private entities to liability:

> a.     possessing biometrics without a proper policy publicly available, 740 ILCS 14/15(a);
>
> b.     collecting biometrics, 740 ILCS 14/15(b);
>
> c.     profiting from biometrics, 740 ILCS 14/15(c); and
>
> d.     disclosing biometrics, 740 ILCS 14/15(d).

16.     As the Illinois Supreme Court has held, BIPA "codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information." *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 33, 129 N.E.3d 1197, 1206 (Ill. 2019). The Illinois Supreme Court further held that when a private entity fails to comply with BIPA "that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach." *Id.*

**A.     Collecting Biometrics Under Section 15(b) of BIPA.**

17.     BIPA imposes three requirements that must be satisfied before any private entity may "collect, capture . . . or otherwise obtain" an individual's biometrics:

> a.     First, the private entity must inform the individual in writing that the

4

FILED DATE: 1/26/2021 2:34 PM   2021CH00374

individual's biometrics are being collected or stored. 740 ILCS 14/15(b)(1).

b.    Second, the private entity must inform the individual in writing of the purpose and length of time for which their biometrics are being collected, stored, and used. 740 ILCS 14/15(b)(2).

c.    Finally, the private entity must receive a written release executed by the individual or a legally authorized representative. 740 ILCS 14/15(b)(3).

18.    BIPA defines a "written release," outside the employment context, to mean "informed written consent." 740 ILCS 14/10.

**B.    BIPA's Unqualified Prohibition on Profiting from Biometrics Under Section 15(c).**

19.    BIPA additionally bars private entities from profiting from individuals' biometrics. Section 15(c) provides as follows:

> No private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information.

740 ILCS 14/15(c).

20.    Section 15(c) is an unqualified prohibition on profiting from biometrics.

**C.    Disseminating Biometrics Under Section 15(d).**

21.    BIPA also prohibits the "disclos[ure], redisclos[ure], or other[] disseminat[ion]" of biometrics without consent, unless the "disclosure or redisclosure completes a financial transaction" that is requested or authorized by the individual, is required by law, or is required in order to comply with a valid warrant or subpoena. 740 ILCS 14/15(d).

FILED DATE: 1/26/2021 2:34 PM   2021CH00374

## FACTUAL BACKGROUND

22.     Defendant Nuance Communications, Inc. provides a number of voice data related products and services to hundreds of companies across the country that interact with thousands of Illinois residents daily. Defendant's products and services revolve around the integration of speech and voice recognition technology that utilize and rely on voiceprint biometrics.

23.     Nuance has been providing voiceprint biometric services since 2001, and has integrated its voice biometric technology across a variety of services and platforms. Indeed, as part of its voiceprint biometrics services Nuance maintains one of the largest databases of voiceprints, containing 600 million voiceprints which Nuance uses to authenticate over 8 billion transactions a year.[1]

24.     A significant portion of the voiceprint biometric services provided by Nuance is its "Interactive Voice Response" ("IVR") software.

25.     IVR is the robot voice that a caller hears when calling a customer support hotline. Nuance's IVR differs from traditional IVR because unlike traditional IVRs, Nuance's IVR software collects and analyzes callers' actual voiceprints to understand the caller's request and automatically respond with a personalized response instead of simply providing menus of options from which the caller can press a number to select what they wish to accomplish.[2]

26.     By collecting individuals' unique voiceprints, Nuance's IVR software also allows its customers to trace every contact point, or "channel" as Nuance terms it, where a *specific* individual interacts with it. Thus, for example, when a caller contacts a customer service hotline that utilizes Nuance's IVR, the IVR software can extract the voiceprint of the caller to (1) track

---

[1]     https://investors.nuance.com/2020-09-03-Nuance-Named-Top-Biometrics-Vendor-by-Opus-Research-in-Intelligent-Authentication-and-Fraud-Prevention-Report (accessed 1/19/2021).
[2] www.youtube.com/watch?v=Le5aEq-wqhg (accessed 1/19/2020).

6

FILED DATE: 1/26/2021 2:34 PM    2021CH00374

the interaction, and (2) identify whether that individual has previously interacted with the company and through which means of contact the interaction occurred.

27.     Nuance's IVR software also allows its customers to utilize its voiceprint identification functionality to try to identify individuals who may be engaging in fraudulent conduct by detecting specific speech patterns.[3]

28.     While thousands of individuals across the country, and throughout Illinois, interact with Nuance's IVR software on a daily basis, Nuance fails to implement any sort of uniform policy to ensure that it obtains written consent from individuals interacting with its IVR software before obtaining their voiceprint biometrics.

29.     For example, one of Nuance's biggest users of its IVR software is FedEx.

30.     FedEx is one of the largest mail couriers in the world, averaging more than 16,000,000 packages processed and over 500,000 calls received every day.[4]

31.     To help achieve customer service goals and reduce call agent volumes, FedEx, like numerous other Nuance customers, purchased access to Nuance's IVR software to create an automated interactive customer service phone line.[5]

32.     When a caller calls FedEx's customer service phone line, as with other companies' utilizing Nuance's IVR software, they are greeted with an automated voice that asks the customer what they are calling about instead of simply presenting a predetermined set of options.

---

[3] www.globenewswire.com/news-release/2018/02/26/1387271/0/en/Nuance-Introduces-Significant-Advancements-to-Market-Leading-Biometrics-Solution-Security-Suite-Leverages-AI-to-Curb-Fraud-Across-Voice-and-Digital-Channels.html (accessed 1/19/2020).
[4] www.fedex.com/ma/about/overview/innovation.html (accessed 1/19/2021).
[5] www.nuance.com/omni-channel-customer-engagement/case-studies/fedex.html (accessed on 1/19/2021).

FILED DATE: 1/26/2021 2:34 PM    2021CH00374

33.     To provide this "personalized" interactive voice experience to callers, Nuance's IVR software uses its proprietary integrated artificial intelligence technology to collect and analyze the caller's voiceprint so that it can determine the caller's "intent," understand the "context" of any requests made such as "scheduling a pickup" or "tracking a package," and where appropriate route the call to the correct customer service department.[6]

34.     Not only does Nuance's IVR software collect and analyze callers' voiceprints so that it can interact with them and understand their requests, but it also captures the data obtained and stores it so that it could be provided to a customer service agent if the caller is eventually transferred.[7]

35.     Furthermore, as with its IVR software provided to other companies, the IVR software provided by Nuance to FedEx also incorporates "end-to-end" analytics that automatically captures every single call placed to the automated customer service phone line and analyzes the caller's voiceprint to determine caller "intent," create a transcript of any interaction and/or information provided, and even isolate the caller's voice from any other audio that may be present during the call.[8] This information is then provided to FedEx, as with other users of Nuance's IVR software, so that FedEx can resolve any issues with customer interactions and determine whether the IVR software needs to be updated in any way to better respond to callers.

---

[6] *See* www.nuance.com/omni-channel-customer-engagement/technologies/natural-language-understanding.html (accessed on 1/19/2021);
www.nuance.com/content/dam/nuance/en_us/collateral/enterprise/data-sheet/ds-nuance-recognizer11-en-us.pdf (accessed on 1/19/2021); www.nuance.com/omni-channel-customer-engagement/voice-and-ivr/conversational-ivr.html (accessed on 1/19/2021);
www.nuance.com/omni-channel-customer-engagement/case-studies/fedex.html
[7] www.nuance.com/omni-channel-customer-engagement/case-studies/fedex.html.
[8] www.nuance.com/omni-channel-customer-engagement/case-studies/fedex.html;
www.nuance.com/omni-channel-customer-engagement/analytics/nuance-analytics.html (accessed on 1/19/2021); www.nuance.com/omni-channel-customer-engagement/voice-and-ivr/insights.html (accessed on 1/19/2021).

FILED DATE: 1/26/2021 2:34 PM   2021CH00374

36.     Like thousands of other Illinois residents, Plaintiff interacted with Nuance's IVR software and had her voiceprint biometrics collected when she called FedEx's automated customer service phone line in late December 2020 to find out the status of a package that had been shipped to her.

37.     When Plaintiff called FedEx's customer service phone line she was greeted by a recording which stated that the audio may be recorded for quality assurance, followed by an automated voice generated by Nuance's IVR software asking how it could assist Plaintiff.

38.      Plaintiff interacted with Nuance's IVR software and asked for the status of a package shipment that she was scheduled to receive but had not arrived on time. Plaintiff was then prompted by the IVR software to provide tracking information. Plaintiff did not have the tracking information available at the time and requested that the IVR software transfer her to a customer service agent. Nuance's IVR software subsequently transferred Plaintiff to a FedEx customer service agent who provided Plaintiff additional information.

39.     As with the thousands of other putative class members, from the moment that Plaintiff interacted and spoke to Nuance's IVR, her unique voiceprint was obtained to analyze Plaintiff's intent, determine the context of her call, prepare information to be passed on to the customer service representative, and to allow FedEx to review the phone call to determine whether there were any issues, errors, or misunderstandings made by Nuance's IVR.

40.     However, at no point in time either before the call or during the call was Plaintiff aware that throughout the entire call Nuance's IVR software was collecting, analyzing, and storing her unique individual voiceprint as she interacted with the IVR system.

FILED DATE: 1/26/2021 2:34 PM   2021CH00374

41.     Nor did Plaintiff, like the thousands of Illinois residents who interact with Nuance's IVR software ever provide written consent allowing Nuance to capture, store, or disseminate her voiceprint biometrics.

42.     Plaintiff to this day does not know the whereabouts of the voiceprint biometrics Nuance obtained from her through its IVR software.

## CLASS ALLEGATIONS

43.     Plaintiff brings this action on behalf of herself and a class of similarly situated individuals pursuant to 735 ILCS § 5/2-801. Plaintiff seeks to represent a Class (unless otherwise noted, "Class") defined as follows:

> **Class**: All individuals whose voiceprint biometric identifiers or biometric information were collected, captured, stored, transmitted, disseminated, or otherwise used by or on behalf of Defendant within the state of Illinois any time within the applicable limitations period and for whom Defendant did not have any written record of consent to do so.

44.     Excluded from the Class are any members of the judiciary assigned to preside over this matter; any officer or director of Defendant; and any immediate family of such officer or director.

45.     There are thousands of members of the Class, making the members of the Class so numerous that joinder of all members is impracticable. Although the exact number of members of the Class is currently unknown to Plaintiff, the members can be easily identified through Defendant's records, and records maintained by Defendant's customers.

46.     Plaintiff's claims are typical of the claims of the Class she seeks to represent, because the basis of Defendant's liability to Plaintiff and the Class is substantially the same, and because Defendant's conduct has resulted in similar injuries to Plaintiff and to the Class.

FILED DATE: 1/26/2021 2:34 PM   2021CH00374

47.     There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not limited to, the following:

    a.  Whether Defendant collects, captures, or otherwise obtains voiceprint biometric identifiers or biometric information from Illinois residents who interact with its IVR software;

    b.  Whether Defendant disseminated voiceprint biometrics;

    c.  Whether Defendant obtained a written release from the Class members before capturing, collecting, or otherwise obtaining their voiceprint biometric identifiers or biometric information;

    d.  Whether Defendant's conduct violates BIPA;

    e.  Whether Defendant's BIPA violations are willful or reckless; and

    f.  Whether Plaintiff and the Class are entitled to damages and injunctive relief.

48.     Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

49.     Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class she seeks to represent. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and

FILED DATE: 1/26/2021 2:34 PM   2021CH00374

have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to those of the other members of the Class.

50.     Defendant has acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

**COUNT I**
**Violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*.**
**(On behalf of Plaintiff and the Class)**

51.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

52.     Defendant Nuance is a private entity under BIPA.

53.     BIPA requires a private entity, such as Defendant, to obtain informed written consent from individuals before acquiring their biometric information. Specifically, BIPA makes it unlawful to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of for which a biometric identifier or biometric information is being captured, collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . ." 740 ILCS 14/15(b).

54.     Plaintiff and the other Class members have had their "biometric identifiers," namely their voiceprints, collected, captured, or otherwise obtained by Defendant when they interacted with its IVR software. 740 ILCS 14/10.

FILED DATE: 1/26/2021 2:34 PM    2021CH00374

55.     Each instance when Plaintiff and the other Class members interacted with Defendant's IVR software, Defendant captured, collected, stored, and/or used Plaintiff's and the other Class members' voiceprint biometric identifiers without valid consent and without complying with and, thus, in violation of BIPA.

56.     Defendant's practice with respect to capturing, collecting, storing, and using biometrics fails to comply with applicable BIPA requirements:

    a.   Defendant failed to inform Plaintiff and the members of the Class in writing that their biometrics were being collected and stored, prior to such collection or storage, as required by 740 ILCS 14/15(b)(1);

    b.   Defendant failed to inform Plaintiff and the Class in writing of the specific purpose for which their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

    c.   Defendant failed to inform Plaintiff and the Class in writing the specific length of term their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

    d.   Defendant failed to obtain a written release, as required by 740 ILCS 14/15(b)(3); and

    e.   Defendant failed to obtain informed consent to disclose or disseminate the Class' biometrics to its customers such as FedEx, as required by 740 ILCS 14/15(d)(1).

57.     By providing paying customers IVR software which uses voiceprint biometrics to analyze callers' voices and interact with them without any of the privacy protections required by BIPA, Defendant profited from Plaintiff's and the other Class members' voiceprint biometric identifiers in violation of 740 ILCS 14/15(c).

FILED DATE: 1/26/2021 2:34 PM   2021CH00374

58.     Defendant knew, or was reckless in not knowing, that the IVR software that it provided and operated and which thousands of Illinois residents interacted with would be subject to the provisions of BIPA yet failed to comply with the statute.

59.     By capturing, collecting, storing, using, and disseminating Plaintiff's and the Class' biometrics as described herein, Defendant denied Plaintiff and the Class their right to statutorily required information and violated their respective rights to biometric information privacy, as set forth in BIPA.

60.     BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA. 740 ILCS 14/20(1)–(2).

61.     Defendant's violations of BIPA, a statute that has been in effect since 2008, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendant negligently failed to comply with BIPA.

62.     Accordingly, with respect to Count I, Plaintiff, individually and on behalf of the proposed Class, prays for the relief set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the proposed Class, respectfully requests that this Court enter an Order:

a.   Certifying the Class as defined above, appointing Plaintiff as class representative and the undersigned as class counsel;

b.   Declaring that Defendant's actions, as set forth herein, violate BIPA;

c.   Awarding injunctive and equitable relief as necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA;

FILED DATE: 1/26/2021 2:34 PM   2021CH00374

d.   Awarding statutory damages of $5,000 for each willful and/or reckless violation of the BIPA, pursuant to 740 ILCS 14/20(2);

e.   Awarding statutory damages of $1,000 for each negligent violation of the BIPA, pursuant to 740 ILCS 14/20(1);

f.   Awarding reasonable attorneys' fees, costs, and other litigation expenses, pursuant to 740 ILCS 14/20(3);

g.   Awarding pre- and post-judgment interest, as allowable by law; and

h.   Awarding such further and other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: January 26, 2021

Respectfully Submitted,

MICHELLE CAMPANA, individually and on behalf of a class of similarly situated individuals

By:      /s/ Eugene Y. Turin
              *One of Plaintiff's Attorneys*

Eugene Y. Turin
Timothy P. Kingsbury
David Gerbie
Colin P. Buscarini
MCGUIRE LAW, P.C.  (Firm ID: 56618)
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
tkingsbury@mcgpc.com
dgerbie@mcgpc.com
cbuscarini@mcgpc.com

*Attorneys for Plaintiff and the Putative Class*

15

FILED
1/26/2021 3:08 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH00374

11976976

FILED DATE: 1/26/2021 3:08 PM   2021CH00374

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| MICHELLE CAMPANA, individually and on behalf of similarly situated individuals, | ) ) ) ) | |
| *Plaintiff,* | ) ) | No. 2021-CH-00374 |
| v. | ) ) | Hon. Neil H. Cohen |
| NUANCE COMMUNICATIONS, INC., a Massachusetts Corporation. | ) ) ) | |
| *Defendant.* | ) | |

## <u>NOTICE OF MOTION</u>

To:

NUANCE COMMUNICATIONS, INC.
c/o CT Corporation System
208 S. LaSalle St., Suite 814
Chicago, IL 60604

On May 26, 2021 at 9:30 a.m. or as soon thereafter as counsel may be heard, I shall appear before the Honorable Neil H. Cohen or any Judge sitting in that Judge's stead, in courtroom 2308, located at the Richard J. Daley Center, 50 W. Washington St., Chicago, Illinois 60602, and present *Plaintiff's Motion for Class Certification or, Alternatively, for a Deferred Class Certification Ruling Pending Discovery*.

| | | | |
|---|---|---|---|
| **Name:** | McGuire Law, P.C. | **Attorney for:** | Plaintiff |
| **Address:** | 55 W. Wacker Dr., 9th Fl. | **City:** | Chicago, IL 60601 |
| **Telephone:** | (312) 893-7002 | **Firm ID**.: | 56618 |

- 1 -

FILED DATE: 1/26/2021 3:08 PM   2021CH00374

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on January 26, 2021, a copy of Plaintiff's Motion for Class Certification or, Alternatively, for a Deferred Class Certification Ruling Pending Discovery was sent to Defendant's Registered Agent by way of first class mail by depositing the same in a United States Mailbox.

/s/ Eugene Y. Turin_____
Eugene Y. Turin, Esq.

Return Date: No return date scheduled
Hearing Date: 5/26/2021 10:00 AM - 10:00 AM
Courtroom Number:
Location:

FILED
1/26/2021 3:08 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH00374

11976976

FILED DATE: 1/26/2021 3:08 PM   2021CH00374

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

|  |  |  |
|---|---|---|
| MICHELLE CAMPANA, individually and on behalf of similarly situated individuals, | ) ) ) ) | |
| *Plaintiff*, | ) ) | No. 2021-CH-00374 |
| v. | ) ) | Hon. Neil H. Cohen |
| NUANCE COMMUNICATIONS, INC., a Massachusetts Corporation. | ) ) ) | |
| *Defendant.* | ) | |

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION OR, ALTERNATIVELY, FOR A DEFERRED CLASS CERTIFICATION RULING PENDING DISCOVERY

Plaintiff Michelle Campana, by and through her undersigned counsel, pursuant to 735 ILCS 5/2-801, moves for entry of an order certifying the Class proposed below, appointing Plaintiff as Class Representative, and appointing Plaintiff's attorneys as Class Counsel. Alternatively, Plaintiff requests, to the extent the Court determines further evidence is necessary to prove any element of 735 ILCS 5/2-801, that the Court defer consideration of this Motion pending a reasonable period to complete discovery. *See, e.g., Ballard RN Center, Inc. v. Kohll's Pharmacy & Homecare, Inc.*, 2015 IL 118644, at ¶¶ 42–43 (citing *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896–97 (7th Cir. 2011). In support of her Motion, Plaintiff submits the following Memorandum of Law.

Dated: January 26, 2021                                    Respectfully Submitted,

                                                           MICHELLE CAMPANA, individually and on
                                                           behalf of a Class of similarly situated individuals

                                                           By: /s/ Eugene Y. Turin
                                                           *One of Plaintiff's Attorneys*

FILED DATE: 1/26/2021 3:08 PM   2021CH00374

Eugene Y. Turin
Timothy P. Kingsbury
David Gerbie
Colin P. Buscarini
MCGUIRE LAW, P.C. (Firm ID: 56618)
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
tkingsbury@mcgpc.com
dgerbie@mcgpc.com
cbuscarini@mcgpc.com

*Attorneys for Plaintiff and the Putative Class*

FILED DATE: 1/26/2021 3:08 PM   2021CH00374

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION OR, ALTERNATIEY, FOR
A DEFFERED CLASS CERTIFICATION RULING PENDING DISCOVERY**

This Court should certify a class of Illinois residents whose biometrics were obtained by Nuance Comminutions, Inc. ("Defendant") in violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA"). Defendant is one of the largest providers of communication-based technology services to companies and organization around the world. One of Defendant's most popular products is its Interactive Voice Response (IVR) software that allows its customers to set up automated customer service telephone lines that automatically interact with callers. However, unbeknownst to callers such as Plaintiff and the other members of the putative Class, Nuance's IVR software extracts callers' voiceprint biometrics in order to determine the caller's intent, provide customized automated responses, obtain customer information, and collect analytics about the call. In doing so, Defendant has violated BIPA because it failed to obtain proper consent prior to collecting, disseminating, and profiting from Plaintiff's and the other class members' voiceprint biometrics. After Plaintiff learned of Defendant's wrongful conduct, she brought suit on behalf of a class of similarly situated individuals to put a stop to Defendant's collection of Illinois residents' voiceprint biometrics in violation of BIPA, and to obtain redress for all persons injured by its conduct.

## I.   INTRODUCTION: BIPA

The Illinois Biometric Information Protection Act is designed to protect individuals' biometrics. "Biometrics" refers to a "biology-based set[s] of measurements." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017). Specifically, "biometrics" are "a set of measurements of a specified physical component (eye, finger, voice, hand, face)." *Id.* at 1296. Under BIPA, biometric identifiers include handprints, fingerprints and voiceprints; while

FILED DATE: 1/26/2021 3:08 PM   2021CH00374

biometric information can be defined as any information based on a biometric identifier, regardless of how it is converted or stored. (Complaint, "Compl.," ¶¶ 8, 10, 13–14.)

In recognition of the importance of the security of individuals' biometrics, the Illinois Legislature enacted BIPA, which provides, *inter alia*, that private entities, such as Defendant, may not obtain and/or possess an individual's biometrics unless they: (1) inform that person in writing that biometric identifiers or information will be captured, collected, stored, or used; (2) inform that person in writing of the specific purpose and the length of term for which such biometric identifiers or biometric information is being captured, collected, stored, and used; (3) receive a written release from the person for the collection of his or her biometric identifiers and/or information; and (4) publish publicly and make available a written retention schedule and guidelines for permanently destroying biometric identifiers and biometric information. 740 ILCS 14/15; Compl., ¶ 15. In addition, BIPA also prohibits private companies from selling, leasing, trading, or otherwise profiting from a person's or a customer's biometric identifier or biometric information. 740 ILCS 14/15(c); Compl., ¶ 19. And lastly BIPA prohibits the "disclos[ure], redisclos[ure], or other[] disseminat[ion]" of biometrics without consent, unless the "disclosure or redisclosure completes a financial transaction" that is requested or authorized by the individual, is required by law, or is required in order to comply with a valid warrant or subpoena. 740 ILCS 14/15(d); Compl., ¶ 21.

## II.   FACTUAL BACKGROUND

### A.   The Underlying Misconduct.

Defendant is a provider of voice biometric based services and products to hundreds of companies across the country that interact with thousands of Illinois residents daily. (Compl., ¶ 22.) Among Defendant's main products is its IVR software that allows callers to interact with an automated system that creates customized responses based on the caller's request rather than

having to navigate through a limited set of menu options. (Compl., ¶¶ 24–25.) Critically, Defendant's IVR software functions by collecting and analyzing callers' voiceprint biometrics to determine the callers' intent, isolate audio, gather analytics and information from the call, and in some circumstances identify and track interactions with each unique caller. (*Id.* at ¶¶ 25–27.)

One of Defendant's largest customers that utilizes its IVR software is FedEx. (*Id.* at ¶ 29.) FedEx, like numerous other Nuance customers, purchased access to Defendant's IVR software to create an automated interactive customer service phone line. (*Id.* at ¶ 31.) Defendant's IVR software utilized by FedEx greets callers to FedEx's customer service phone line and uses Defendant's voiceprint biometric functionality to interact with the caller, prepare personalized responses, obtain data to pass to FedEx customer service agents, and record analytics about the call. (*Id.* at ¶¶ 32–35.) However, as with other customers utilizing Defendant's IVR software, Defendant failed to implement a uniform policy to ensure that individuals are informed that their voiceprint biometrics are being collected, analyzed, and disseminated. (*Id.* at ¶ 40.)

Plaintiff interacted with Defendant's IVR software in December 2020 when she called FedEx's customer service phone line to inquire about the status of a package that was shipped to her. (*Id.* at ¶ 36.) During the call Plaintiff's voiceprint biometrics were obtained and utilized by Defendant's IVR to understand her request, transmit her information to a customer service representative, and gather call analytics. (*Id.* at ¶ 39.) However, as with thousands of other Illinois residents who interact with Defendant's IVR software on a daily basis, Plaintiff did not at any time before or during the call know that her voiceprint biometrics were being obtained by Defendant, nor did Plaintiff give consent for Defendant to do so. (*Id.* at ¶¶ 40–41.)

FILED DATE: 1/26/2021 3:08 PM   2021CH00374

FILED DATE: 1/26/2021 3:08 PM   2021CH00374

**B.     The Proposed Class**

Plaintiff brings this action on behalf of herself and similarly situated individuals pursuant to 735 ILCS § 5/2-801. Plaintiff seeks to represent a Class defined as follows:

> **Class**: All individuals whose voiceprint biometric identifiers or biometric information were collected, captured, stored, transmitted, disseminated, or otherwise used by or on behalf of Defendant within the state of Illinois any time within the applicable limitations period and for whom Defendant did not have any written record of consent to do so.

(Compl., ¶ 43.) As explained below, the proposed Class satisfies each of the four requirements for certification under Section 2-801 of the Illinois Code of Civil Procedure—numerosity, commonality, adequacy of representation, and fair and efficient adjudication. A class action is not just appropriate here, it is also the only way that the members of the putative Class can obtain appropriate redress for Defendant's unlawful conduct.

**III.     ARGUMENT**

**A.     Standards for Class Certification**

To obtain class certification, it is not necessary for a plaintiff to establish that she will prevail on the merits of the action. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("[T]he question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." (internal quotation marks and citation omitted)). As such, in determining whether to certify a proposed class, the Court should accept the allegations of the complaint as true. *Ramirez v. Midway Moving & Storage, Inc.*, 378 Ill. App. 3d 51, 53 (1st Dist. 2007).

To proceed with a class action, the movant must satisfy the "prerequisites for the maintenance of a class action" set forth in Section 2-801 of the Illinois Code of Civil Procedure, which provides:

FILED DATE: 1/26/2021 3:08 PM 2021CH00374

An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds:

(1)     The class is so numerous that joinder of all members is impracticable.

(2)     There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.

(3)     The representative parties will fairly and adequately protect the interest of the class.

(4)     The class action is an appropriate method for the fair and efficient adjudication of the controversy.

735 ILCS 5/2-801. As demonstrated below, each prerequisite is established for the Class, and the Court should therefore certify the proposed Class.

Section 2-801 is modeled after Rule 23 of the Federal Rules of Civil Procedure and "federal decisions interpreting Rule 23 are persuasive authority with regard to questions of class certification in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 125 (Ill. 2005). Circuit courts have broad discretion in determining whether a proposed class meets the requirement for class certification and ought to err in favor of maintaining class certification. *Ramirez*, 378 Ill. App. 3d at 53. While a court may rule on class certification without requiring further discovery, *see* Manual for Complex Litigation (Fourth) § 21.14, at 255 (2004), courts have found that discovery is helpful prior to addressing a motion for class certification. *See, e.g., Ballard RN Center, Inc. v. Kohll's Pharmacy & Homecare, Inc.*, 2015 IL 118644, at ¶ 42 ("If the parties have yet to fully develop the facts needed for certification, then they can also ask the district court to delay its ruling to provide time for additional discovery or investigation.") (quoting *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011)).

All the prerequisites for class certification are satisfied here, even though Plaintiff has not yet had an opportunity to engage in and complete discovery. However, in the interests of establishing a more fully developed record before ruling on class certification issues, the Court

FILED DATE: 1/26/2021 3:08 PM   2021CH00374

should defer ruling on this Motion pending the completion of discovery and submission of supplemental briefing.

### B.      The Numerosity Requirement is Satisfied

The first step in certifying a class is a showing that "the class is so numerous that joinder of all members is impracticable." 735 ILCS 5/2-801(1). This requirement is met when "join[ing] such a large number of plaintiffs in a single suit would render the suit unmanageable and, in contrast, multiple separate claims would be an imposition on the litigants and the courts." *Gordon v. Boden*, 224 Ill. App. 3d 195, 200 (1st Dist. 1991) (citing *Steinberg v. Chicago Med. Sch.*, 69 Ill.2d 320, 337 (Ill. 1977)). To satisfy this requirement a plaintiff need not demonstrate the exact number of class members but, must offer a good faith estimate as to the size of the class. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006).

Plaintiff alleges that there are thousands of members of the Class. (Compl., ¶¶ 41, 45.) Because definitive evidence of numerosity can only come from the records of Defendant and its agents, it is proper to rely upon the allegations of the Complaint in certifying the Class. *See* 2 A. Conte & H. Newberg, Newberg on Class Actions § 7.20, at 66 (stating that where numerosity information is in the sole possession of the party opposing the class, courts generally rely on the complaint as prima facie evidence or defer ruling).

Additionally, the members of the putative Class can be easily and objectively determined from Defendant's records as its IVR software tracks all call interactions and the telephone numbers from which they originate, as well as the accompanying customer records maintained by Defendant's customers. Furthermore, it would be completely impracticable to join the claims of the members of the Class, because they are disbursed throughout Illinois, and because absent a class action, few members could afford to bring an individual lawsuit over the amounts at issue in

FILED DATE: 1/26/2021 3:08 PM    2021CH00374

this case, because each individual member's claim is relatively small. *See Gordon*, 224 Ill. App. 3d at 200. Accordingly, the first prerequisite for class certification is met.

### C.    Common Questions of Law and Fact Predominate

The second requirement of Section 2-801(2) is met where there are "questions of fact or law common to the class" and those questions "predominate over any questions affecting only individual members." 735 ILCS 5/2-801(2). Such common questions of law or fact exist when the members of the proposed class have been aggrieved by the same or similar misconduct. *See Miner v. Gillette Co.,* 87 Ill.2d 7, 19 (Ill. 1981); *Steinberg*, 69 Ill.2d at 342. These common questions must also predominate over any issues affecting individual class members. *See O-Kay Shoes, Inc. v. Rosewell*, 129 Ill. App. 3d 405, 408 (1st Dist. 1984). These common questions include: whether Defendant collects, captures, or otherwise obtains voiceprint biometrics from Illinois residents who interact with its IVR software; whether Defendant disseminated voiceprint biometrics of Illinois residents; whether Defendant obtained a written release from the Class members before capturing, collecting, or otherwise obtaining their voiceprint biometrics; whether Defendant's conduct violates BIPA; whether Defendant's BIPA violations are willful or reckless; and whether Plaintiff and the Class are entitled to damages and injunctive relief. (Compl., ¶ 47.)

As alleged, and as will be shown through obtainable evidence, during the relevant time period Defendant engaged in a common course of conduct by collecting, capturing, storing, disseminating and profiting from Class members' voiceprint biometrics without obtaining the proper consent required by BIPA. Given that BIPA requires a record of consent to engage in such conduct, whether Defendant had valid consent is also a common issue subject to common resolution. Any potential individualized issues remaining after common issues are decided would be *de minimis*. Accordingly, common issues of fact and law predominate over any individual

FILED DATE: 1/26/2021 3:08 PM   2021CH00374

issues, and Plaintiff has satisfied this hurdle to certification.

**D.      Adequate Representation**

The third prong of Section 2-801 requires that "[t]he representative parties will fairly and adequately protect the interest of the class." 735 ILCS 5/2-801(3). The class representative's interests must be generally aligned with those of the class members, and class counsel must be "qualified, experienced and generally able to conduct the proposed litigation." *See Miner*, 87 Ill.2d at 14; *see also Eshaghi v. Hanley Dawson Cadillac Co., Inc.*, 214 Ill. App. 3d 995, 1000 (1st Dist. 1991). The purpose of this adequacy of representation requirement is "to insure that all Class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim." *Purcell & Wardrope Chtd. v. Hertz Corp.*, 175 Ill. App. 3d 1069, 1078 (1st Dist. 1988).

In this case, Plaintiff has the exact same interest as the members of the proposed Class. Plaintiff has alleged that, like the other members of the Class, her voiceprint biometrics were obtained by Defendant through its IVR software and without her consent. (Compl., ¶¶ 36–41.) Plaintiff's pursuit of this matter against Defendant demonstrates that she will be a zealous advocate for the Class. Further, proposed class counsel has regularly engaged in major complex and class action litigation in state and federal courts and have been appointed as class counsel in several complex consumer class actions. Accordingly, the proposed class representative and proposed class counsel will adequately protect the interests of the members of the Class, thus satisfying Section 2-801(3).

**E.      Fair and Efficient Adjudication of the Controversy**

The final requirement for class certification under 5/2-801 is met where "the class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-

FILED DATE: 1/26/2021 3:08 PM   2021CH00374

801(4). "In applying this prerequisite, a court considers whether a class action: (1) can best secure the economies of time, effort and expense, and promote uniformity; or (2) accomplish the other ends of equity and justice that class actions seek to obtain." *Gordon*, 224 Ill. App. 3d at 203. In practice, a "holding that the first three prerequisites of section 2-801 are established makes it evident that the fourth requirement is fulfilled." *Gordon*, 224 Ill. App. 3d at 204; *Purcell & Wardrope Chtd.*, 175 Ill. App. 3d at 1079 ("The predominance of common issues [may] make a class action . . . a fair and efficient method to resolve the dispute."). Because numerosity, commonality and predominance, and adequacy of representation have been satisfied in the instant case, it is "evident" that the appropriateness requirement is met as well.

Other considerations further support certification in this case. A "controlling factor in many cases is that the class action is the only practical means for class members to receive redress." *Gordon*, 586 N.E.2d at 467; *Eshaghi*, 574 N.E.2d at 766 ("In a large and impersonal society, class actions are often the last barricade of…protection."). A class action is superior to multiple individual actions "where the costs of litigation are high, the likely recovery is limited" and individuals are unlikely to prosecute individual claims absent the cost-sharing efficiencies of a class action. *Maxwell*, 2004 WL 719278, at *6. This is especially true in cases involving data privacy violations and data breaches, which can involve significant injury to the those effected, but result in many small, individual claims. Here, absent a class action, most members of the Class would find the cost of litigating their statutorily-limited claims to be prohibitive, and multiple individual actions would be judicially inefficient. *Id.*

Certification of the proposed Class is necessary to ensure that Defendant's conduct becomes compliant with BIPA, to ensure that the Class members' privacy rights in their biometrics are sufficiently protected, and to compensate those individuals who have had their statutorily-

FILED DATE: 1/26/2021 3:08 PM   2021CH00374

protected privacy rights violated. Were this case not to proceed on a class-wide basis, it is unlikely that any significant number of Class members would be able to obtain redress, or that Defendant would willingly implement the procedures necessary to comply with the statute. Thus, proceeding as a class action here is an appropriate method to fairly and efficiently adjudicate the controversy.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the requirements of 735 ILCS 5/2-801 are satisfied. Plaintiff respectfully requests that the Court enter an Order certifying the proposed Class, appointing Plaintiff as Class Representative, appointing McGuire Law, P.C. as Class Counsel, and awarding such additional relief as the Court deems reasonable. Alternatively, the Court should defer ruling on this Motion pending the completion of appropriate discovery and supplemental briefing.

Dated: January 26, 2021                    Respectfully Submitted,

MICHELLE CAMPANA, individually and on behalf of a class of similarly situated individuals

By: /s/ Eugene Y. Turin
*One of Plaintiff's Attorneys*

Eugene Y. Turin
Timothy P. Kingsbury
David Gerbie
Colin P. Buscarini
MCGUIRE LAW, P.C. (Firm ID: 56618)
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
tkingsbury@mcgpc.com
dgerbie@mcgpc.com
cbuscarini@mcgpc.com

*Attorneys for Plaintiff and the Putative Class*