**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHELLE CAMPANA, individually and on behalf of a class of similarly situated individuals, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cv-01241 |
| | ) | |
| NUANCE COMMUNICATIONS, INC., a Massachusetts Corporation, | ) ) | Hon. John J. Tharp Jr. |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT
NUANCE COMMUNICATIONS, INC.'S MOTION
TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Defendant Nuance Communications, Inc. ("Nuance") respectfully submits this Memorandum in support of its Motion to Dismiss Plaintiff Michelle Campana's Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

Plaintiff Michelle Campana alleges that, when she called a FedEx Corporation ("FedEx") customer service telephone number in December 2020, she interacted with interactive voice response ("IVR") software that Nuance provided to FedEx. Plaintiff asserts that, during her interaction with the IVR software, Nuance collected, used, and stored her biometric data in violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA").

Plaintiff fails to state a claim against Nuance for several reasons.

*First*, Plaintiff does not plausibly allege that the Nuance IVR software collected, used, and stored her "biometric identifier" or "biometric information," which is required to assert a claim

under BIPA. As demonstrated below, although Plaintiff makes conclusory allegations that the Nuance IVR software collects "voiceprints," the Nuance video and Nuance and FedEx web pages that Plaintiff references in the Complaint as the basis for her allegations regarding the IVR software do not support those conclusions. Instead, that video and those documents describe Nuance IVR software that performs speech recognition (*i.e.*, determining the *words* that are spoken), rather than biometric fraud prevention and authentication (*i.e.*, determining whether the *speaker* is the person authorized to access an account or other financial or personal information), and Plaintiff does not otherwise plead any factual content that would permit the Court to reasonably infer that the Nuance IVR software collected Plaintiff's voiceprint.

*Second*, even if Nuance IVR software *did* involve the collection, use, and storage of voiceprints (it does not), Plaintiff does not plausibly plead that Nuance's alleged conduct occurred primarily and substantially in Illinois, and therefore Plaintiff fails to state a claim under BIPA arising from such conduct.

*Third*, Plaintiff does not plausibly allege that Nuance "otherwise profited from" her purported biometric data in violation of Section 15(c) of BIPA.

Nuance respectfully submits that, for these reasons, which are addressed in detail below, the Court should dismiss Plaintiff's Complaint in its entirety under Fed. R. Civ. P. 12(b)(6).

## BACKGROUND

Nuance is a Delaware corporation, with its principal place of business in Burlington, Massachusetts. (*See* Dkt. 1-1, Complaint ("Compl.") ¶ 5.)[1] Nuance provides voice data-related products and services to customers throughout the United States. (*Id.* ¶ 22.) Plaintiff alleges that

---

[1] The caption in Plaintiff's Complaint erroneously refers to Nuance as a "Massachusetts Corporation," notwithstanding that in Paragraph 5, Plaintiff correctly alleges that Nuance is a Delaware corporation. Nuance's principal place of business *is* in Massachusetts.

Nuance is registered to do business in Illinois (*see id.* ¶ 5), but does not allege that Nuance performs any collection, processing, or storage of voice-related data in Illinois. (*See generally id.*)

One of the products Nuance provides to some of its customers is "interactive voice response," or "IVR," software. (*See id.* ¶ 24.) Rather than forcing a caller to navigate a fixed IVR "menu tree" (*e.g.*, "press or say 1 for account balance information, press or say 2 to make a payment," etc.), Nuance IVR software uses speech recognition technology to deliver human-like conversational dialogue that understands and reacts to a caller's questions and requests. (*See, e.g.*, https://www.youtube.com/watch?v=Le5aEq-wqhg (referenced in Compl. ¶ 25 n.2); https://www.nuance.com/omni-channel-customer-engagement/case-studies/fedex.html (referenced in *id.* ¶ 31 n.5, ¶ 33 n.6, ¶ 34 n.7, ¶ 35 n.8 (a copy of this web page is attached for the Court's convenience as Ex. 1)); https://www.nuance.com/omni-channel-customer-engagement/technologies/natural-language-understanding.html (referenced in *id.* ¶ 33 n.6 (attached as Ex. 2)); https://www.nuance.com/content/dam/nuance/en_us/collateral/enterprise/data-sheet/ds-nuance-recognizer11-en-us.pdf (referenced in *id.* ¶ 33 n.6 (attached as Ex. 3)); https://www.nuance.com/omni-channel-customer-engagement/voice-and-ivr/conversational-ivr.html (referenced in *id.* ¶ 33 n.6 (attached as Ex. 4)); https://www.nuance.com/omni-channel-customer-engagement/analytics/nuance-analytics.html (referenced in *id.* ¶ 35 n.8 (attached as Ex. 5); https://www.nuance.com/omni-channel-customer-engagement/voice-and-ivr/insights.html (referenced in *id.* ¶ 35 n.8 (attached as Ex. 6)).)[2]

---

[2] This Court can consider this video and these documents, which Plaintiff references in her Complaint as the basis for her allegations regarding Nuance IVR software, and which are central to Plaintiff's BIPA claims, in resolving this motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See, e.g., 188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 735 (7th Cir. 2002); *Venture Assoc. Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

When a caller makes a request or responds to a prompt, Nuance IVR software uses automatic speech recognition technology in order to recognize the words the caller is speaking. (*See, e.g.*, Ex. 3 (describing "Nuance Recognizer 11" speech recognition technology in Nuance IVR software).) Natural Language Understanding programming ("NLU") then analyzes the words together to understand the semantic meaning and intent of the caller's words. (*See, e.g.*, Ex. 1 (stating that FedEx "introduced a new, Natural Language Understanding (NLU) call routing and IVR solution in the U.S. and Canada," and that "[a] brand new design powered by Nuance Communications . . . lets callers say in their own words why they are calling.").) Based on the software's understanding of the caller's question or request, Nuance IVR software uses an advanced dialogue to converse with the caller or steer calls to the appropriate department. (*See, e.g., id.* and Exs. 2, 4.)

One of the customers to which Nuance provides IVR software is FedEx. (Compl. ¶ 29.) Plaintiff alleges that she called a FedEx customer service telephone number in December 2020, and interacted with Nuance's IVR software. (*Id.* ¶¶ 37-38.) Plaintiff describes her interaction with the Nuance IVR software in detail:

> When Plaintiff called FedEx's customer service phone line she was greeted by a recording which stated that the audio may be recorded for quality assurance, followed by an automated voice generated by Nuance's IVR software asking how it could assist Plaintiff.
>
> Plaintiff interacted with Nuance's IVR software and asked for the status of a package shipment that she was scheduled to receive but had not arrived on time. Plaintiff was then prompted by the IVR software to provide tracking information. Plaintiff did not have the tracking information available at the time and requested that the IVR software transfer her to a customer service agent. Nuance's IVR software subsequently transferred Plaintiff to a FedEx customer service agent who provided Plaintiff additional information.

(*Id.*)

Nuance also provides a separate software product, known as the "Nuance Security Suite," to some of its customers. (*See* https://investors.nuance.com/2020-09-03-Nuance-Named-Top-Biometrics-Vendor-by-Opus-Research-in-Intelligent-Authentication-and-Fraud-Prevention-Report (referenced in Compl. ¶ 23 n.1 (attached as Ex. 7)); https://www.globenewswire.com/news-release/2018/02/26/1387271/0/en/Nuance-Introduces-Significant-Advancements-to-Market-Leading-Biometrics-Solution-Security-Suite-Leverages-AI-to-Curb-Fraud-Across-Voice-and-Digital-Channels.html (referenced in *id.* ¶ 27 n.3 (attached as Ex. 8)).) The Security Suite software uses biometric technologies, including voice biometrics, to prevent fraud and to authenticate callers. (*Id.*) Nuance customers that purchase Security Suite software, which include financial institutions and telecommunications companies, use the software to prevent unauthorized access to their customers' accounts and personal information. (*Id.*)

On January 26, 2021, Plaintiff filed this action against Nuance, alleging purported claims under BIPA. (Dkt. 1-1 (Compl.).) BIPA imposes requirements on entities that "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information," *see* 740 ILCS 14/15(b), or are "in possession of" biometric identifiers or biometric information. *See id.* §§ 15(a), (c), (d), and (e). BIPA provides, "'[b]iometric identifier' means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." *Id.* § 10. BIPA further provides, "'[b]iometric information' means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual. Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers." *Id.*

Plaintiff makes conclusory allegations that, when she interacted with Nuance's IVR, the software purportedly collected, analyzed, and stored her "voiceprint." (*See, e.g.,* Compl. ¶¶ 24-28,

33-36, 39.) Plaintiff does not allege any factual content that supports those conclusions, such as, for example, a document that describes the Nuance IVR software as collecting, analyzing, or storing voiceprints, or something in her interaction with the Nuance IVR software provided an indication that the software used her voice to determine or confirm her identity. (*See, generally, id.*) Instead, Plaintiff's detailed description of her interaction with the Nuance IVR software supports, at most, an interference that Nuance IVR uses speech recognition technology. (*See id.* ¶¶ 37-38.) Plaintiff references a YouTube video and Nuance and FedEx web pages as the basis for her allegations regarding Nuance IVR technology, but nothing in the referenced video or documents supports Plaintiff's conclusory allegations that Nuance IVR collects, analyzes, or stores voiceprints. (*See supra* at 3; Exs. 1-6.)

Plaintiff does not allege that FedEx uses Nuance Security Suite software on calls made to its customer service telephone numbers, and does not allege that she interacted with Nuance Security Suite software when she called FedEx in December 2020. (*See generally* Compl.)

## ARGUMENT

For the reasons set forth below, Nuance respectfully submits that the Court should grant this motion and dismiss Plaintiff's Complaint in its entirety under Fed. R. Civ. P. 12(b)(6).

## I.   Legal Standard

A motion to dismiss under Rule 12(b)(6) should be granted when the complaint fails to state a legal claim to relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007); *Packaging Corp. of Am., Inc. v. Croner*, 419 F. Supp. 3d 1059, 1065 (N.D. Ill. 2020). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The

Court need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. *Alam v. Miller Brewing Co.,* 709 F.3d 662, 666 (7th Cir. 2013). Rather, Fed. R. Civ. P. 8(a)(2), setting forth general rules of pleading, "requires a 'showing,' rather than a blanket assertion, of entitlement to relief," and the showing must include enough facts to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.

## II.     Plaintiff Fails to Plausibly Allege that Nuance IVR Software Collected, Stored, and Used Her Voiceprint.

Plaintiff fails to state a claim against Nuance under BIPA because she does not plausibly allege that Nuance collected, used, and stored her "biometric identifier" or "biometric information" as defined in the statute.

In order to state a claim against Nuance under BIPA, Plaintiff must plausibly allege that Nuance collected, captured, purchased, received through trade, otherwise obtained, or was in possession of Plaintiff's "biometric identifier" or "biometric information." *See* 740 ILCS 14/15(b), (a), (c), (d), and (e). As noted above, BIPA provides that "'[b]iometric identifier' means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry," and that "'[b]iometric information' means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10.

Plaintiff makes repeated, conclusory allegations that, when Plaintiff called FedEx in December 2020 and interacted with Nuance IVR software, Nuance collected, used, and stored her "voiceprint." (*See, e.g.,* Compl. ¶¶ 24-25, 27-28, 33-36; 39.) The Complaint, however, does not include any factual content that would permit the Court to draw a reasonable inference that the Nuance IVR software that Plaintiff used when she called FedEx in December 2020 collected, used, or stored her voiceprint.

Neither the Nuance video regarding its IVR software nor the Nuance and FedEx documents that Plaintiff references in the Complaint as the basis for her allegations regarding Nuance IVR software (*see* supra at 3 and Exs. 1-6), contain any factual content from which the Court could reasonably infer that the Nuance IVR software collects, uses, and stores voiceprints. Instead, that video and those documents describe Nuance IVR software that uses speech recognition technology, *not* biometric fraud detection and authentication technology. (*See id.*) Neither the Nuance video nor the Nuance of FedEx documents regarding Nuance IVR software state or provide any basis to infer that Nuance IVR software collects, uses, or stores voiceprints. (*See id.*) Plaintiff does not reference any other document that describes the Nuance IVR software as collecting, analyzing, or storing voiceprints. (*See id.*)

Moreover, there is nothing in Plaintiff's detailed description of her interaction with Nuance IVR software in December 2020 (*see* Compl. ¶¶ 37-38) that "reasonably triggered [a] suspicion" that the software was collecting, using, or storing her voiceprint. *See Cothron v. White Castle Systems, Inc.*, 467 F. Supp. 3d 604, 618 (N.D. Ill. 2020) (finding that plaintiff there had pleaded allegations of fact that "triggered her suspicion" that the defendant had disseminated her biometric data to a third party); *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Instead, Plaintiff's description of her interaction with the Nuance IVR was entirely – and solely – consistent with speech recognition technology, *not* biometric fraud prevention and identification technology. For example, the Nuance IVR technology did not provide any indication to Plaintiff that it recognized who she was; to the contrary, it asked her to provide a package tracking number. (*See* Compl. ¶ 37.)

To be sure, in her Complaint, Plaintiff *does* reference and rely upon Nuance press releases that discuss "voice biometrics," along with other biometric technologies. (Compl. ¶ 23 n.1, ¶ 27

n.3.) Those press releases, however, describe the capabilities of Nuance Security Suite software, *not* Nuance IVR software. (*See* Exs. 7, 8.) Plaintiff does not – and could not – allege that FedEx uses Nuance Security Suite software on calls made to its customer service telephone numbers, and does not – and could not – allege that she interacted with Nuance Security Suite software when she called FedEx in December 2020. (*See generally* Compl.)

For all of these reasons, Plaintiff fails to plausibly allege that Nuance collected, used, or stored her voiceprint, and therefore does not state a claim against Nuance under BIPA. The Complaint should be dismissed in its entirety under Rule 12(b)(6).

## III. Plaintiff Fails to State BIPA Claims Against Nuance Because She Does Not Plausibly Plead that Any of Nuance's Alleged Conduct Occurred in Illinois.

Even if the Court were to conclude that Plaintiff plausibly alleged that the Nuance IVR software collected, used, and stored Plaintiff's voiceprint (which, as demonstrated above, it should not), Plaintiff nevertheless fails to state a claim because she does not plausibly allege that any of Nuance's alleged conduct occurred in Illinois – which is required to avoid Illinois' prohibition on the extraterritorial application of BIPA.

As the Illinois Supreme Court has held, "a statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 184-85 (2005); *see also Rivera v. Google, Inc.*, 238 F. Supp. 3d 1088, 1100 (N.D. Ill. 2017) (citing *Avery*); *Monroy v. Shutterfly, Inc.,* No. 16 C 10984, 2017 WL 4099846, at *5 (N.D. Ill. Sept. 15, 2017) (citing *Avery*). BIPA does not contain any such provision, and thus cannot be applied extraterritorially. *See generally* 740 ILCS 14/1, *et seq.*; *see also Rivera,* 238 F. Supp. 3d at 1100 (BIPA "was not intended to and does not have extraterritorial application."); *Monroy*, 2017 WL 4099846, at *5 (noting that "none of BIPA's express provisions indicates that the statute was intended to have extraterritorial effect. Accordingly…BIPA does

not apply extraterritorially."). As a result, in order to state a claim under BIPA, an alleged violation must occur within Illinois. *Rivera*, 238 F. Supp. 3d at 1100 (plaintiffs' "asserted violations of [BIPA] must have taken place in Illinois for them to win").

To determine whether a claim alleges a BIPA violation occurring in Illinois, courts look to the allegations to decide whether "the circumstances that relate to the disputed transaction occur[red] primarily and substantially in Illinois." *Landau v. CNA Financial Corp.*, 381 Ill. App. 3d 61, 63 (1st Dist. 2008) (quoting *Avery*, 216 Ill.2d at 187) (affirming dismissal of complaint because "majority of circumstances relating to the alleged violation of the Consumer Fraud Act occurred outside of Illinois"); *Rivera*, 238 F. Supp. 3d at 1101 (quoting *Avery*); *Monro*y, 2017 WL 4099846, at *6 (quoting *Avery*).

Here, although Plaintiff makes a rote, conclusory allegation that her "claims arise out of Defendant's unlawful in-state actions, as Defendant captured, collected, stored, used, and profited from Plaintiff's biometric identifiers and/or biometric information in this State" (*see* Compl. ¶ 6), Plaintiff does not plausibly allege that *any* circumstances relating to Nuance's alleged violations of BIPA occurred in Illinois, much less circumstances that allegedly occurred "primarily and substantially in Illinois." Among other things, Plaintiff does not plead that the FedEx customer service call center that she called in December 2020 was located in Illinois. (*See generally Compl.*) Indeed, she does not even allege that *she* was in Illinois when she called FedEx. Nor does Plaintiff allege any factual content from which the Court could reasonably infer that Nuance collected, used, or stored Plaintiff's voiceprint in Illinois. Plaintiff acknowledges that Nuance is a Delaware corporation, and the Nuance press releases she references in the Complaint show that Nuance's principal place of business is in Burlington, Massachusetts. (*See* Compl. ¶ 5, ¶ 27 n.5; Ex. 7.) Plaintiff does not allege that Nuance has any facility in Illinois, or that Nuance processed

any data relating to Plaintiff's voice on servers located in Illinois. In short, Plaintiff does not plausibly allege that the circumstances relating to Nuance's alleged violations of BIPA occurred "primarily and substantially in Illinois." *Landau*, 381 Ill. App. 3d at 63.

Nuance recognizes that, in other cases, courts have determined that whether the plaintiff's claims involve the extraterritorial application of BIPA could not be resolved at the pleading stage. *See, e.g., Vance v. Int'l Bus. Mach. Corp.*, No. 20 C 577, 2020 WL 5530134, at *3 (Sept. 15, 2020); *Rivera*, 238 F. Supp. 3d at 1101-02; *Monro*y, 2017 WL 4099846, at *6. Nuance respectfully submits, however, that this case is different, because Plaintiff has not alleged *any* circumstances relating to her alleged claims that occurred in Illinois – much less circumstances occurring primarily and substantially in Illinois. Because Plaintiff has wholly failed to plausibly allege claims that involve an application of BIPA that is permissible under *Avery*, she fails to state a claim against Nuance upon which relief can be granted. *See, e.g., Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 775 (N.D. Ill. 2008) (granting motion to dismiss); *Landau*, 381 Ill. App. 2d at 65 (affirming grant of motion to dismiss).

Plaintiff thus fails to state a claim against Nuance upon which relief can be granted, and the Complaint should be dismissed under Rule 12(b)(6).

## IV.    Plaintiff Fails to Plausibly Allege that Nuance Violated Section 15(c) of BIPA.

In addition to the reasons set forth above that Plaintiff's Complaint should be dismissed in its entirety, Plaintiff also fails to plausibly allege that Nuance violated Section 15(c) of BIPA.

Section 15(c) of BIPA prohibits "sell[ing], leas[ing], trad[ing], or otherwise profit[ing] from" a person's biometric identifier or biometric information. 740 ILCS 14/15(c). Plaintiff does not allege that Nuance sold, leased, or traded her biometric data. Instead, Plaintiff bases her claim that Nuance violated Section 15(c) on the allegation that Nuance "profited" from her biometric

data by "providing paying customers IVR software which uses voiceprint biometrics to analyze callers' voices and interact with them without any of the privacy protections required by BIPA." (Compl. ¶ 57.) However, Section 15(c) does not prohibit a company from selling biometric technology. It prohibits selling, leasing, or trading the biometric *data* itself.

Plaintiff fails to plausibly allege that Nuance violated Section 15(c). Section 15(c) makes clear that it prohibits an entity from transferring a person's biometric data to another in exchange for consideration. 740 ILCS 14/15(c). That is the plain meaning of each of the three verbs—"sell, lease, trade"—that are specifically enumerated in Section 15(c). *See Sell*, BLACK'S LAW DICTIONARY at 1567 (10th ed. 2014) (defining "sell" as "[t]o transfer (property) by sale");[3] *Lease*, *id.* at 1026 (defining "lease" as "[t]o grant the possession and use of (land, buildings, rooms, movable property, etc.) to another in return for rent or other consideration"); *Trade*, *id.* at 1720–21 (defining "trade" as "[a] transaction or swap").

Plaintiff's contention that Nuance violated Section 15(c) by "providing paying customers IVR software which uses voiceprint biometrics" rests upon a mischaracterization of the phrase "or otherwise profit from" in Section 15(c). The General Assembly's addition of the ancillary phrase "sell, lease, trade, *or otherwise profit from* [biometric data]," 740 ILCS 14/15(c) (emphasis added), is intended only to prohibit other transfers of biometric data for consideration similar to selling, leasing, or trading biometric data, which the legislature could not "spell[] out in advance." *See Pooh-Bah Enter., Inc. v. Cnty. of Cook*, 232 Ill.2d 463, 492 (2009). It is a "cardinal rule of statutory construction" that "when a statutory clause specifically describes several classes of persons or things and then includes 'other persons or things,' the word 'other' is interpreted to mean 'other

---

[3] "Sale" is defined as "[t]he transfer of property or title for a price." *Sale*, BLACK'S LAW DICTIONARY at 1537 (10th ed. 2014).

such like.'" *Id.* "Thus, the general catchall is not 'given [its] full and ordinary meaning' because to do so would render the specific words superfluous." *Id.*; *see also id.* ("If the legislature had meant the general words to have their unrestricted sense, it would not have used the specific words.").

Thus, the clause "or otherwise profit from" is meant to reinforce the prohibition on selling, leasing, or trading biometric data; it is not meant to broadly prohibit the separate act of furnishing biometric devices or services. See *Bernal v. ADP, LLC,* No. 2017-CH-12364 (Cir. Ct. Cook County Aug. 23, 2019) (attached as Ex. 9) (dismissing 15(c) claim based on profit derived from selling biometric technology on grounds that such actions do not constitute profit from sale or lease of biometric information); *Vance v. Microsoft Corp.*, Case No. C20-1082JLR, 2021 WL 1401634, at *3-4 (W.D. Wash. April 14, 2021) (rejecting plaintiff's argument that Section 15(c) prohibits any use of biometric data that generates profits, and holding that Section 15(c) "regulates transactions with two components: (1) access to biometric data is shared or given to another; and (2) in return for that access, the entity receives something of value."); *cf. Flores v. Motorola Solutions, Inc.*, Case No. 1:20-cv-01128, 2021 WL 232627, at *3 (N.D. Ill. Jan. 8, 2021) (denying motion to dismiss Section 15(c) claim, based upon Court's determination that plaintiffs had plausibly alleged that defendants offered access to a database of biometric data for a fee).

BIPA's legislative history and purpose supports reading Section 15(c) not to prohibit the separate act of furnishing biometric devices or services. For example, Representative Kathleen A. Ryg, a sponsor of BIPA, explained that the origin of the statute was the demise of Pay By Touch and the concern that consumers' biometric data could be sold in a bankruptcy court auction. 95th Ill. Gen. Assem., House Proceedings, May 30, 2008, at 249. Thus, according to Representative Ryg, there was a "very serious need of protections for . . . biometric information"—specifically,

"prohibiting the sale of biometric information." *Id.; see also Sekura v. Krishna Schaumburg Tan, Inc.,* 2018 IL App (1st) 180175, ¶ 64 ("Representative Ryg's remarks establish [] the primary impetus behind the bill."). Representative Ryg's concerns over the possible sale of Pay By Touch's database show that the legislature sought to prohibit the sale of biometric data—not the sale of biometric technology.

Indeed, if Section 15(c) were construed to prohibit any profitmaking activity related to biometric technology, BIPA's entire statutory framework would become unnecessary. No entity could provide biometric technology in Illinois, and the very purpose of BIPA—to "regulat[e]" "biometric-facilitated transactions"—would be eliminated. 740 ILCS 14/5(c), (g); *see Vance,* 2021 WL 1401634, at *4 (noting that such an interpretation of Section 15(c) "would lead to absurd results that contravene BIPA itself."). The legislature made clear that it passed BIPA in order to *encourage* the "use of biometrics." 740 ILCS 14/ 5(a) (setting forth BIPA's "Legislative Findings [and] Intent"). As the Appellate Court has explained, the legislature's intent in "[p]utting these regulations in place" was to "*further* the selection by '[m]ajor national corporations' of 'the City of Chicago and other locations in this State as pilot testing sites for new applications of biometric-facilitated financial transactions . . . .'" *Sekura,* 2018 IL App (1st) 180175, ¶ 58 (emphasis added) (quoting 740 ILCS 14/5(b)). To construe Section 15(c) as prohibiting the sale of biometric technology would undermine the legislature's goal of "promot[ing] . . . the use of biometrics in financial transactions." *Vigil v. Take-Two Interactive Software, Inc.,* 235 F. Supp. 3d 499, 502 (S.D.N.Y. 2017), *aff'd in part, vacated in part on other grounds, Santana v. Take-Two Interactive Software, Inc.,* 717 F. App'x 12 (2d Cir. 2017); *accord Vance*, 2021 WL 1401634, at *4.

Here, Plaintiff fails to plausibly allege a violation of Section 15(c) of BIPA, and that claim should be dismissed in its entirety.

## CONCLUSION

WHEREFORE, for all of the reasons set forth above, Defendant Nuance Communications, Inc. respectfully requests that the Court grant this motion and enter an Order dismissing Plaintiff's complaint in its entirety, and providing for such other and further relief as is just and appropriate.

Dated: May 10, 2021

NUANCE COMMUNICATIONS, INC.

By: */s/ David C. Layden*
     One of its attorneys

David C. Layden
Elena M. Olivieri
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350
DLayden@jenner.com
EOlivieri@jenner.com

## CERTIFICATE OF SERVICE

I certify that on May 10, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.

*/s/ David C. Layden*