**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHELLE CAMPANA, individually and on behalf of similarly situated individuals, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 21 CV 1241 |
| v. | ) ) ) | Judge John J. Tharp, Jr. |
| NUANCE COMMUNICATIONS, INC., | ) ) ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Campana's motion to remand [16] is granted. Plaintiff lacks Article III standing for her claim that defendant Nuance Communications violated section 15(c) of the Illinois Biometric Privacy Act (740 ILCS 14/15(c)); accordingly, that claim is remanded to the Circuit Court of Cook County. This Court retains jurisdiction over the remaining claims. The defendant's motion to dismiss [12] is denied without prejudice; a revised motion reflecting remand of the section 15(c) claim, or an answer, shall be filed by March 11, 2022.

## STATEMENT

Plaintiff Michelle Campana called FedEx one day in December 2020 to inquire about the status of a package that had been sent to her. Her call was answered by an automated system that, she alleges, collected and analyzed callers' voiceprints to better understand the caller's request and to provide a more personalized response. Though Campana knew that the call might be recorded, she did not know that the software running the automated phone system was collecting voiceprint information during the call and that the supplier of the software, Nuance Communications, was retaining that biometric data in servers and accessing it to provide the software's features to its clients.

The issue at bar is whether the plaintiff has Article III standing to pursue a claim that defendant Nuance Communications violated Section 15(c) of the Illinois Biometric Privacy Act ("BIPA"). That section prohibits private entities in possession of biometric data from selling, leasing, trading, or otherwise profiting from that data. The putative class action complaint asserts that Nuance violated this and two other provisions of BIPA (sections 15(b) and (d)). Nuance removed the entire action based on the Class Action Fairness Act criteria that there is minimal diversity, the putative class has more than 100 members, and the aggregate amount in controversy is more than $5 million. 28 U.S.C. § 1332(d). The plaintiff does not contest removal of the claims under Sections 15(b) and (d) of BIPA but has moved to remand the claim under Section 15(c), contending that the complaint does not allege a concrete and particularized injury caused by the Section 15(c) violation. The parties agree that the plaintiff has Article III standing to pursue her

15(b) and (d) claims and so those claims should remain before this Court even if the 15(c) claim is remanded.

In arguing that she lacks Article III standing as to her 15(c) claim, the plaintiff relies primarily on the Seventh Circuit's decision in *Thornley v. Clearview AI, Inc*., 984 F.3d 1241 (7th Cir. 2021). In *Thornley*, the Court of Appeals affirmed the remand of a section 15(c) claim, agreeing with the district court that the plaintiffs lacked standing because they had alleged only that the defendant had violated section 15(c)'s prohibition of profiting from possession of another person's biometric identifiers or information and alleged no concrete and particularized injury resulting from that violation. Indeed, the Court of Appeals pointed out that the plaintiffs in *Thornley* had expressly disavowed "any injury as a result of the violations of Section 15(c) of BIPA other than the statutory aggrievement alleged" in the complaint. And consistent with that disavowal, the *Thornley* plaintiffs also defined the putative class to exclude any person who claimed any injury other than statutory aggrievement arising from the violation of section 15(c).

Campana maintains that her allegations regarding section 15(c) are "nearly identical" to those the Seventh Circuit deemed insufficient to provide Article III standing in *Thornley*. ECF No. 16 at 4. With respect to the section 15(c) claim, the complaint in this case alleges only that "[b]y providing paying customers IVR software which uses voiceprint biometrics to analyze callers' voices and interact with the ... Defendant profited from Plaintiff's and the other Class members' voiceprint biometric identifiers in violation of [Section 15(c)]." Complaint ¶ 57. The plaintiff also confirms that she seeks only statutory damages, not actual damages.

Nuance points to three differences between Campana's complaint and that of the *Thornley* plaintiffs that, it maintains, sufficiently allege that Campana suffered a concrete and particularized injury. First is that, in contrast to the *Thornley* complaint's disavowal of a concrete injury, Campana's complaint expressly alleges that she and the putative class "have suffered a concrete injury resulting from" the alleged BIPA violations, including using the biometrics for profit. Complaint ¶ 2. Second and more specifically, the complaint goes on to allege that in using biometrics for profit, Nuance "materially decreas[ed] the security of [the biometrics] and substantially increas[ed] the likelihood that [the class members] will suffer as victims of fraud and/or identity theft in the future." Complaint ¶ 2. Finally, Nuance points out, the complaint alleges that Nuance profited from use of the biometrics of the putative class members "[b] providing paying customers IVR software which uses voiceprint biometrics to analyze callers' voices and interact with them without any of the privacy protections required by BIPA." ECF No. 19 at 4.

While these distinctions make this a closer call on standing than the *Thornley* complaint presented, the allegations of the complaint in this case do not suffice to demonstrate that Campana has Article III standing. The allegations that Nuance focuses on do not, even collectively, describe a concrete and particularized injury. To begin, although the *Thornley* plaintiffs expressly disavowed any concrete and particularized injury from the alleged violation of section 15(c), such an affirmative disavowal of any concrete injury is hardly required to conclude that a plaintiff has no standing; the flip side of that coin is that a conclusory allegation that the plaintiffs suffered a concrete injury from the collective violations alleged does not suffice to establish standing. Here, the only allegation of concrete injury fails both because it is conclusory and because it is made in the aggregate as to the collective BIPA violations asserted and so is ambiguous as to what act(s)

2

caused the concrete injury alleged—particularly given that there is no dispute that the alleged violations of section 15(b) and (d) of BIPA adequately allege a concrete injury.

Nuance next points to the complaint's allegation that profiting from its use of their biometrics will expose the putative class members to greater risk of fraud or identity theft. And if Campana alleged that she was the victim of identity theft as a result of a BIPA violation by Nuance, that allegation would, to be sure, establish standing. But to confer standing, an alleged injury must be "actual or imminent, not conjectural or hypothetical"; "allegations of possible future injury are not sufficient." *Prosser v. Becerra*, 2 F.4th 708, 713-24 (7th Cir. 2021). The complaint includes no allegations about how, or to what degree, the risk of exposure increases and so provides no basis to assess the likelihood that a putative class member would be victimized by Nuance's use of their biometric data for profit. This claim is entirely conjectural and therefore does not provide standing. *See also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2211-12 (2021) ("mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a separate concrete harm").

Finally, Nuance argues that Campana has standing because she alleges that Nuance profited from its use of biometric data by virtue of its violations of other provisions of BIPA (presumably sections 15(b) and (d)). In paragraph 57, the complaint alleges that by selling software that uses voiceprint biometrics "without any of the privacy protections required by BIPA"; Nuance submits that the alleged improper use of biometric data "for profit" therefore claims a privacy injury "akin" to those recognized as sufficient to confer standing under section 15(b). And since Campana has standing to pursue claims for violations of those provisions, Nuance contends that she must also have standing to pursue a section 15(c) claim that is premised on those violations.

This argument derives from an unsuccessful argument made by the plaintiffs in Thornley. They argued that the court of appeals should equate the injury arising from a section 15(c) violation to the injuries arising from the improper collection and retention of data under section 15(b)—violations as to which the Seventh Circuit has affirmed standing. The Seventh Circuit explained that it was conceptually sound but rejected it nonetheless because the plaintiffs had not alleged any connection between the violation of the distinct provisions:

> We have no quarrel with the idea that a different complaint might reflect that type of equivalence. A plaintiff might assert, for example, that by selling her data, the collector has deprived her of the opportunity to profit from her biometric information. Or a plaintiff could assert that the act of selling her data amplified the invasion of her privacy that occurred when the data was first collected, by disseminating it to some unspecified number of other people. ... Without any such allegations of concrete and particularized harm to the plaintiffs, we are left with a general rule that prohibits the operation of a market in biometric identifiers and information.

*Thornley*, 984 F.3d at 1247.

Nuance maintains that in paragraph 57 of the complaint, Campana alleges what the *Thornley* plaintiffs did not—namely, a basis to equate the concrete and particularized injury arising from a violation of section 15(b) and the prohibition of profiting from the possession of biometric

3

data. But the equivalence is false; Nuance's argument conflates cause for the section 15(c) violation and injury caused by that violation. What Campana alleges in paragraph 57 of the complaint is that as a result of other violations of BIPA, Nuance profited. If true, that would help Campana prove that Nuance violated section 15(c), but it says nothing to establish that Campana was injured in a concrete and particularized way by Nuance's profit. And without such allegations of particularized harm flowing from the violation of section 15(c), that provision is akin not to provisions like section 15(b) but to the "kind of general regulation [like] the duty to create and publish a retention and destruction schedule found in section 15(a)"—as to which a violation does not itself confer standing. *Thornley,* 984 F.3d at 1247.

Accordingly, Campana lacks Article III standing to assert her section 15(c) claim in federal court. Her motion to remand that claim to the Circuit Court of Cook County is granted. This Court retains jurisdiction over the remaining claims (though nothing in this order precludes agreement by the parties to remand the remaining claims to the state court as well). The defendant's motion to dismiss is denied without prejudice; a revised motion reflecting remand of the section 15(c) claim, or an answer, shall be filed by March 11, 2022.

Dated: February 15, 2022

John J. Tharp, Jr.
United States District Judge