**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHELLE CAMPANA and CHERAL HOLLIS, both individually and on behalf of similarly situated individuals, | ) ) ) | |
| | ) | No. 1:21-cv-01241 |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | Hon. John J. Tharp, Jr |
| | ) | |
| NUANCE COMMUNICATIONS, INC., a Massachusetts Corporation. | ) ) | **Jury Trial Demanded** |
| | ) | |
| *Defendant.* | ) | |

## THIRD AMENDED CLASS ACTION COMPLAINT

Plaintiff Michelle Campana ("Campana") and Plaintiff Cheral Hollis ("Hollis") (together "Plaintiffs"), both individually and on behalf of other similarly situated individuals, bring this Third Amended Class Action Complaint against Defendant Nuance Communications, Inc. ("Nuance") for violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA"), and to obtain redress for all persons injured by Defendant's conduct. Plaintiffs allege as follows based personal on knowledge as to their own acts and experiences, and as to all other matters, upon information and belief, including an investigation conducted by their attorneys.

## INTRODUCTION

1. Plaintiffs seek to represent two classes of individuals whose privacy rights were unknowingly violated through their interactions with Defendant's biometrically enabled voice interaction services that collected, stored, and disseminated their voice biometrics.

2. Plaintiff Michelle Campana seeks to represent a class of individuals who made phone calls to entities who used automated interactive customer service phone software offered by

Defendant and had their unique biometric voiceprints collected and used without their consent or authorization.

3.　　Plaintiff Cheral Hollis seeks to represent a class of individuals who made phone calls to entities that paid to use Defendant's identity verification and fraud prevention Security Suite software and had their unique biometric voiceprints collected and used without their consent or authorization.

4.　　Plaintiffs and the other members of the putative classes have suffered a concrete injury resulting from their voiceprint biometrics being collected, disseminated, and used for profit without their knowledge or consent, thus materially decreasing the security of this intrinsically inalterable information, and substantially increasing the likelihood that they will suffer as victims of fraud and/or identity theft in the future.

5.　　On behalf of themselves and the two proposed Classes defined below, Plaintiffs seek an injunction requiring Defendant to comply with BIPA, as well as an award of statutory damages to the Classes, together with costs and reasonable attorneys' fees.

## **PARTIES**

6.　　At all relevant times, Plaintiff Michelle Campana has been a resident and a citizen of the state of Illinois.

7.　　At all relevant times, Plaintiff Cheral Hollis has been a resident and a citizen of the state of Illinois.

8.　　Defendant Nuance Communications, Inc. is a Delaware company that conducts substantial business throughout Illinois, including in Cook County, and is registered with and authorized by the Illinois Secretary of State to transact business in Cook County, Illinois.

2

## JURISDICTION AND VENUE

9.      Defendant removed this case pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) et seq., asserting that: the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; there are greater than 100 putative class members; at least one putative class member is a citizen of a state other than Defendant; and none of the exceptions under subsection § 1332(d) apply.

10.     This Court has personal jurisdiction over Defendant with respect to Plaintiffs' and the putative class members' claims, because (1) Defendant is registered with and authorized by the Illinois Secretary of State to transact business in Cook County, Illinois. (2) Defendant knowingly and intentionally transacts business within Illinois and such that it has sufficient minimum contacts with Illinois and has purposely availed itself of Illinois markets to make it reasonable for this Court to exercise jurisdiction over Defendant; and (3) because Plaintiffs' and the putative class members' claims arise out of or relate to Defendant's unlawful in-state conduct, as Defendant's violations of BIPA occurred within Illinois as Plaintiffs' and the putative class members' voiceprint biometrics were collected in Illinois.

11.     Venue is proper in this District under 28 U.S.C. § 1392 because Defendant resides in this District under §1392(c)(2), and because a substantial part of events giving rise to the Plaintiffs' claims occurred in this District.

## THE BIOMETRIC INFORMATION PROTECTION ACT

12.     "Biometrics" refers to a "biology-based set[s] of measurements." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017). Specifically, "biometrics" are "a set of measurements of a specified physical component (eye, finger, voice, hand, face)." *Id.* at 1296.

13.     BIPA was enacted in 2008 in order to safeguard individuals' biometrics as the result of the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276. BIPA is codified as Act 14 in Chapter 740 of the Illinois Compiled Statutes.

14.     In passing BIPA, the Illinois General Assembly found that major *national* corporations started using Chicago and other locations in Illinois in the early 2000s to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias" 740 ILCS 14/5(b). Given its relative infancy, an overwhelming portion of the public became weary of this then- growing yet unregulated technology. See 740 ILCS 14/5.

15.     With the possibilities of the injuries that could derive from unregulated use of biometric information by private entities being endless, unknown, and imminently threatening, it became evident to Illinois citizens and legislators that it is crucial for individuals to understand when providing biometric identifiers or information such as a finger scan, and/or data derived therefrom, who exactly is collecting their biometric data, where it will be transmitted and for what purposes, and for how long.

16.     As set forth in BIPA, biologically unique identifiers, such as a person's unique voiceprint, cannot be changed. 740 ILCS 14/5(c). The inalterable nature of biologically unique identifiers presents a heightened risk when an individual's biometrics are not protected in a secure and transparent fashion. 740 ILCS 14/5(d)–(g).

17.     As a result of the need for enhanced protection of biometrics, BIPA imposes various requirements on private entities that collect or maintain individuals' biometrics, including voiceprints.

4

18.     Among other things, BIPA seeks to regulate "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g). BIPA thus applies to entities that interact with two forms of biometrics: biometric "identifiers" and biometric "information." 740 ILCS 14/15(a)–(e).

19.     BIPA defines a "biometric identifier" as any personal feature that is unique to an individual, including fingerprints, voiceprints, and hand geometry. "Biometric identifiers" are physiological, as opposed to behavioral, characteristics. BIPA's text provides a non-exclusive list of protected "biometric identifiers," including "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.

20.     "Biometric information" is defined by BIPA as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.* This definition helps ensure that information based on a biometric identifier that can be used to identify a person is covered by BIPA. Collectively, biometric identifiers and biometric information are known as "biometrics."

21.     In BIPA, the Illinois General Assembly identified four distinct activities that may subject private entities to liability:

      a.     possessing biometrics without a proper policy publicly available, 740 ILCS 14/15(a);

      b.     collecting biometrics, 740 ILCS 14/15(b);

      c.     profiting from biometrics, 740 ILCS 14/15(c); and

      d.     disclosing biometrics, 740 ILCS 14/15(d).

22.     As the Illinois Supreme Court has held, BIPA "codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information." *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 33, 129 N.E.3d 1197, 1206 (Ill. 2019).

The Illinois Supreme Court further held that when a private entity fails to comply with BIPA "that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach." *Id.*

**A.**     **Possessing Biometrics Under Section 15(a) of BIPA.**

23.     Section 15(a) regulates the publication of a retention schedule and guidelines for destroying collected biometric information. 740 ILCS 14/15(a).

24.     BIPA requires companies to make publicly available a written policy establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

**B.**     **Collecting Biometrics Under Section 15(b) of BIPA.**

25.     BIPA imposes three requirements that must be satisfied before any private entity may "collect, capture . . . or otherwise obtain" an individual's biometrics:

a.     First, the private entity must inform the individual in writing that the individual's biometrics are being collected or stored. 740 ILCS 14/15(b)(1).

b.     Second, the private entity must inform the individual in writing of the purpose and length of time for which their biometrics are being collected, stored, and used. 740 ILCS 14/15(b)(2).

c.     Finally, the private entity must receive a written release executed by the individual or a legally authorized representative. 740 ILCS 14/15(b)(3).

26.     BIPA defines a "written release," outside the employment context, to mean "informed written consent." 740 ILCS 14/10.

6

**C.     BIPA's Unqualified Prohibition on Profiting from Biometrics Under Section 15(c).**

27.     BIPA additionally bars private entities from profiting from individuals' biometrics.

Section 15(c) provides as follows:

> No private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information.

740 ILCS 14/15(c).

28.     Section 15(c) is an unqualified prohibition on profiting from biometrics.

**D.     Disseminating Biometrics Under Section 15(d).**

29.     BIPA also prohibits the "disclos[ure], redisclos[ure], or other[] disseminat[ion]" of biometrics without consent, unless the "disclosure or redisclosure completes a financial transaction" that is requested or authorized by the individual, is required by law, or is required in order to comply with a valid warrant or subpoena. 740 ILCS 14/15(d).

## FACTUAL BACKGROUND

30.     Defendant provides a number of voice data related products and services to hundreds of companies across the country that interact with thousands of Illinois residents daily. Defendant's products and services revolve around the integration of speech and voice recognition technology that utilize and rely on voiceprint biometrics.

31.     A significant portion of the voiceprint biometric services provided by Nuance are its "Interactive Voice Response" ("IVR") software and its Nuance Security Suite.

32.     While Defendant's IVR and Nuance Security Suite software perform different functions for its customers, they both require the extraction, collection, possession, processing, and dissemination of consumers' voiceprint biometrics.

A.     **Nuance's IVR Software.**

33.     IVR typically is the automated robot voice that a caller hears when calling a customer support hotline. Nuance's IVR differs from traditional IVR because unlike traditional IVRs, Nuance's IVR software collects and analyzes callers' voiceprints to understand the caller's request and automatically respond with a personalized response instead of simply providing menus of options from which the caller can press a number to select what they wish to accomplish.[1]

34.     By collecting individuals' unique voiceprints, Nuance's IVR software also allows its customers to trace every contact point, or "channel" as Nuance terms it, where a *specific* individual interacts with it. Thus, for example, when a caller contacts a customer service hotline that utilizes Nuance's IVR, the IVR software can extract the voiceprint of the caller to (1) track the interaction, and (2) identify whether that individual has previously interacted with the company and through which means of contact the interaction occurred.

35.     While thousands of individuals across the country, and throughout Illinois, interact with Nuance's IVR software on a daily basis, Nuance fails to implement any sort of uniform policy to ensure that those who interact with Nuance's IVR systems provide their consent for Nuance to gather and use their voiceprint biometrics during the interaction.

36.     For example, one of Nuance's biggest users of its IVR software is FedEx.

37.     FedEx is one of the largest mail couriers in the world, averaging more than 16,000,000 packages processed and over 500,000 calls received every day.[2]

---

[1] www.youtube.com/watch?v=Le5aEq-wqhg (accessed 1/19/2020).
[2] www.fedex.com/ma/about/overview/innovation.html (last accessed 1/19/2021).

38. To help achieve its customer service goals and reduce call agent volumes, FedEx, like numerous other Nuance customers, purchased access to Nuance's IVR software to create an automated interactive customer service phone line. [3]

39. When a caller calls FedEx's customer service phone line, as with other companies' utilizing Nuance's IVR software, they are greeted with an automated voice that asks the customer what they are calling about instead of simply presenting a predetermined set of options.

40. To provide this "personalized" interactive voice experience to callers, Nuance's IVR software uses its proprietary integrated artificial intelligence technology to collect and analyze the caller's voiceprint so that it can determine the caller's "intent," understand the "context" of any requests made such as "scheduling a pickup" or "tracking a package," and where appropriate route the call to the correct customer service department.[4]

41. Not only does Nuance's IVR software collect and analyze callers' voiceprints so that it can interact with them and understand their requests, but it also captures the data obtained and stores it so that it could be provided to a customer service agent if the caller is eventually transferred.[5]

42. Furthermore, as with its IVR software provided to other companies, the IVR software provided by Nuance to FedEx also incorporates "end-to-end" analytics that automatically captures every single call placed to the automated customer service phone line and analyzes the

---

[3] www.nuance.com/omni-channel-customer-engagement/case-studies/fedex.html (last accessed 1/19/2021).
[4] *See* www.nuance.com/omni-channel-customer-engagement/technologies/natural-language-understanding.html (last accessed 1/19/2021);
www.nuance.com/content/dam/nuance/en_us/collateral/enterprise/data-sheet/ds-nuance-recognizer11-en-us.pdf (last accessed 1/19/2021); www.nuance.com/omni-channel-customer-engagement/voice-and-ivr/conversational-ivr.html (last accessed 1/19/2021);
www.nuance.com/omni-channel-customer-engagement/case-studies/fedex.html.
[5] www.nuance.com/omni-channel-customer-engagement/case-studies/fedex.html.

caller's voiceprint to determine caller "intent," create a transcript of any interaction and/or information provided, and even isolate the caller's voice from any other audio that may be present during the call.[6] This information is then provided to FedEx, as with other users of Nuance's IVR software, so that FedEx can resolve any issues with customer interactions and determine whether the IVR software needs to be updated in any way to better respond to callers.

43.     Critically, as with its other clients, consumers who interacted with Nuance's IVR when they contacted FedEx were unaware of how its IVR functioned and that as they spoke with the IVR system it was gathering their voiceprint biometrics from them speaking into their phone in order to interact with them.

**B.    Nuance's Security Suite.**

44.     In addition to its IVR software, one of Nuance's most widely provided services is its "Nuance Security Suite" voice-based biometric security software platform.

45.     Defendant's Nuance Security Suite software is a biometric security service that verifies the identity of the person who is interacting with a customer utilizing the software and/or to identify individuals who may be engaging in fraudulent conduct through their communications with a Nuance customer utilizing the software.[7] [8] [9]

46.     Critically, Defendant's Nuance Security Suite software is able to perform these

---

[6] www.nuance.com/omni-channel-customer-engagement/case-studies/fedex.html; www.nuance.com/omni-channel-customer-engagement/analytics/nuance-analytics.html (accessed on 1/19/2021); www.nuance.com/omni-channel-customer-engagement/voice-and-ivr/insights.html (accessed on 1/19/2021).

[7] https://news.nuance.com/2018-02-26-Nuance-Introduces-Significant-Advancements-to-Market-Leading-Biometrics-Solution-Security-Suite-Leverages-AI-to-Curb-Fraud-Across-Voice-and-Digital-Channels.

[8] https://www.nuance.com/content/dam/nuance/de_de/collateral/enterprise/data-sheet/nuance-PXF-security-and-biometrics.pdf.

[9] https://news.nuance.com/2019-03-21-Nuance-Biometrics-Saved-Enterprises-1B-in-Fraud-in-2018.

functions by collecting and analyzing the voiceprints of the individuals who call its customers utilizing the software to either compare them with previously stored voiceprints to authenticate a particular user or to determine if the speech indicates any signs of potentially fraudulent activity. Furthermore, Nuance's Security Suite collects the geolocation of the caller's phone through the telephone network being used by the caller.

47.     While thousands of individuals across the country, and throughout Illinois, interact with Nuance's Security Suite software on a daily basis, these individuals are unaware that Nuance is obtaining their voiceprint biometrics when they interact with any of the hundreds of entities that utilize Nuance's software.

48.     For example, one of Nuance's larger clients that utilizes Nuance's Security Suite is Spectrum Cable, a nationwide provider of cable, internet, and phone services with more than 32,000,000 customers across 41 states, including Illinois. [10] [11]

49.     Spectrum, like numerous other Nuance customers, purchased access to Nuance's Security Suite software to integrate its biometric security features into its customer service phone lines.

50.     When a Spectrum customer calls its customer service phone line, they are presented with an option to enroll in "Voice ID" that uses the voice input into their phone to verify their identity. Thereafter, whenever a customer calls in for details involving an account that has been enrolled in Voice ID, Nuance's Security Suite software automatically works to gather the geolocation of the caller and the caller's voiceprint in an attempt to determine whether their voice matches a prior voiceprint that is on file for the consumer and to perform fraud detection.

---

[10] https://corporate.charter.com/aboutcharter#:~:text=(NASDAQ%3ACHTR)%20is%20a,states%20through%20its%20Spectrum%20brand.
[11] www.spectrum.com/services/illinois.

51.    However, at no point is the caller informed that Nuance is the entity collecting their voiceprint biometrics, or provided any information about how their voiceprint will be stored, used, or when it might be deleted. Indeed, the caller has absolutely no knowledge about Nuance's involvement in any manner.

52.    Nuance by developing, marketing, and selling[12] its Security Suite software that relies on voiceprint biometrics to operate, directly profits from the collection, possession, and use of the voiceprint biometrics of individuals' like Plaintiff who have verbally interacted with it.

53.    Indeed, one of Nuance's largest selling points is that Nuance maintains one of the largest databases of voiceprints, containing 600 million voiceprints which Nuance uses to authenticate over 8 billion transactions a year.[13]

54.    With the capabilities of AI and automated biometric powered voice services that collect voiceprints such as Defendant's Nuance Security Suite software expanding by the day so does the list of potential threats to the individuals' privacy rights who interact with these AI and automated biometric powered voice services.[14]

**FACTS SPECIFIC TO PLAINTIFF MICHELLE CAMPANA**

55.    Like thousands of other Illinois residents, Plaintiff Campana interacted with Nuance's IVR software and had her voiceprint biometrics collected when she called FedEx's automated customer service phone line in late December 2020 to find out the status of a package that had been shipped to her residence in Illinois.

---

[12] Nuance specifically sells its products from within Illinois as Nuance's Senior Vice President of Sales and other Nuance sales positions with regional emphasis are located in Chicago, Illinois.  (*See* www.signalhire.com/profiles/sean-postol%27s-email/5024266; *see also* www.signalhire.com/profiles/glenn-kulpinski%27s-email/379290).
[13] https://news.nuance.com/2022-01-06-Nuance-Earns-Top-Spot-in-Opus-Research-2022-Intelligent-Authentication-and-Fraud-Prevention-Report.
[14] *See e.g.,* www.dailystar.co.uk/tech/news/terrifying-microsoft-ai-can-build-28928017; www.zawya.com/en/world/uk-and-europe/ai-voice-tool-misused-as-deepfakes-flood-web-forum-sgk0l8lt.

56.     When Plaintiff Campana called FedEx's customer service phone line she was greeted by a recording which stated that the audio may be recorded for quality assurance, followed by an automated voice generated by Nuance's IVR software asking how it could assist Plaintiff.

57.     Plaintiff Campana interacted with Nuance's IVR software and asked for the status of a package shipment that she was scheduled to receive but had not arrived on time. Plaintiff was then prompted by the IVR software to provide tracking information. Plaintiff did not have the tracking information available at the time and requested that the IVR software transfer her to a customer service agent. Nuance's IVR software subsequently transferred Plaintiff to a FedEx customer service agent who provided Plaintiff additional information.

58.     As with the thousands of other putative class members, from the moment that Plaintiff Campana interacted and spoke to Nuance's IVR, her unique voiceprint was obtained through her telephone to analyze Plaintiff's intent, determine the context of her call, prepare information to be passed on to the customer service representative, and to allow FedEx to review the phone call to determine whether there were any issues, errors, or misunderstandings made by Nuance's IVR.

59.     Plaintiff's voiceprint was collected by Nuance's IVR while Plaintiff was in Illinois making a phone call to FedEx's automated customer service phone line in Illinois, for the purpose of checking the status of a package that was shipped to her Illinois residence.

60.     However, at no point in time either before the call or during the call was Plaintiff aware that throughout the entire call Nuance's IVR software was collecting, analyzing, and storing her unique individual voiceprint from her voice inputs into her telephone as she interacted with the IVR system.

61.     Even though Nuance was aware that Illinois residents would be calling FedEx's automated customer service phone line and FedEx operated customer service centers in Illinois, Nuance failed to obtain a written release from Plaintiff Campana in Illinois to capture, store, or disseminate her voiceprint biometrics.

**FACTS SPECIFIC TO PLAINTIFF CHERAL HOLLIS**

62.     Like thousands of other Illinois residents, Plaintiff Hollis interacted with Nuance's Security Suite software and had her voiceprint biometrics collected from the voice inputs to her telephone when she called Spectrum's automated customer service phone line several times a year from 2020 to December 2022 to discuss certain questions that she had regarding her account for her cable and internet service for her Chicago, Illinois residence.

63.     As with the thousands of other putative members of the Nuance Security Suite Class, Plaintiff called Spectrum's automated customer service phone line from within Illinois using a telephone that had an Illinois area code.

64.     Upon connecting with the customer service line sometime in 2020, Plaintiff was asked whether she wanted to enroll in Spectrum's "Voice ID" account authentication system.

65.     Thinking that enrolling in Voice ID would help secure her account and speed up authentication for future customer service calls, Plaintiff Hollis enrolled in Spectrum's Voice ID.

66.     Plaintiff utilized Nuance's Voice ID when calling Spectrum multiple times in 2020, 2021, and 2022 in Illinois.

67.     Each time that Plaintiff Hollis contacted Spectrum after enrolling in Nuance's Voice ID, Nuance obtained Plaintiff's location along with Plaintiff's unique voiceprint using her voice inputs on her telephone to determine whether it matched the prior voiceprint that had been gathered from Plaintiff.

68.     Plaintiff's voiceprint was collected by Nuance's VoiceID while Plaintiff was in Illinois making a phone call to Spectrum's customer service phone line in Illinois, for the purpose of obtaining information related to her cable and internet service for her Illinois residence.

69.     However, at no point prior, during, or after enrolling, was Plaintiff Hollis informed that it was actually Nuance that was collecting her voiceprint biometrics, or otherwise informed how her voiceprint biometrics would be stored, or for how long.

70.     Even though Nuance was aware that Illinois residents would be utilizing its VoiceID service in Illinois, Nuance failed to obtain a written release from Plaintiff Hollis in Illinois to capture, store, or disseminate her voiceprint biometrics.

71.     By failing to comply with BIPA, Defendant has violated Plaintiffs Campana's and Hollis' and the other members of the Classes' substantive state law rights to biometric privacy in Illinois and exposed Plaintiffs and other Illinois residents to ongoing privacy risks in Illinois.

72.     Critically, as with the very impetus for the passage of BIPA involving a bankruptcy of an entity that stored the biometrics of thousands of Illinois residents, Plaintiffs and the other members of the Classes are not aware of what Nuance may do with their voiceprint biometrics, including to whom they may be disclosed given that Nuance's privacy policy failed to provide valid retention and deletion schedules as required by BIPA.

73.     The risk of Plaintiffs' and the other Illinois residents' voiceprint biometrics being disclosed and used by an unknown entity is especially acute given Nuance's recent acquisition by Microsoft.[15]

74.     As such, Illinois had and has a direct interest in regulating the unlawful conduct alleged herein in order to protect the rights and interests of its residents.

---

[15] https://news.microsoft.com/2022/03/04/microsoft-completes-acquisition-of-nuance-ushering-in-new-era-of-outcomes-based-ai/.

## CLASS ALLEGATIONS

75.     Plaintiffs bring this action on behalf of themselves and two Classes of similarly situated individuals pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), as representatives on behalf of two Classes defined as follows:

> **The IVR Class**: All Illinois residents whose voiceprint biometric identifiers or biometric information were collected, captured, stored, transmitted, disseminated, or otherwise processed by or on behalf of Defendant via Defendant's IVR software and services while within the state of Illinois any time within the applicable limitations period and for whom Defendant did not have any written record of consent to do so.

> **The Nuance Security Suite Class**: All Illinois residents whose voiceprint biometric identifiers or biometric information had been collected, captured, stored, transmitted, disseminated, or otherwise processed by or on behalf of Defendant via its voice based Nuance Security Suite, and all of its related software and services while within the state of Illinois any time within the applicable limitations period and for whom Defendant did not have any written record of consent to do so.

76.     Excluded from the Classes are any members of the judiciary assigned to preside over this matter; any officer or director of Defendant; and any immediate family of such officer or director.

77.     There are thousands of members of the Classes, making the members of the Classes so numerous that joinder as to each of the Classes' members is impracticable. Although the exact number of members of the Classes is currently unknown to Plaintiffs, the members of the Classes can be easily identified through Defendant's records, and records maintained by Defendant's customers.

78.     Plaintiffs' claims are typical of the claims of the Classes Plaintiffs seek to represent, because the basis of Defendant's liability to Plaintiffs and the Classes are substantially the same, and because Defendant's conduct has resulted in similar injuries as to Plaintiffs and the Classes.

79. There are many questions of law and fact common to the claims of Plaintiffs and the Classes the respectively represent, and those questions predominate over any questions that may affect individual members of the IVR Class and the Nuance Security Suite Class.

80. Common questions for the Classes include, but are not limited to, the following:

a. Whether Defendant collects, captures, or otherwise obtains voiceprint biometric identifiers or biometric information from Illinois residents who interact with its IVR software;

b. Whether Defendant collects, captures, or otherwise obtains voiceprint biometric identifiers or biometric information from Illinois residents who interact with its Nuance Security Suite software;

c. Whether Defendant obtained written consent from the members of the Classes prior to collecting their voiceprint biometrics;

d. Whether Defendant disseminated the Classes' voiceprint biometrics;

e. Whether Defendant obtained a written release from the members of the Classes before capturing, collecting, or otherwise obtaining their voiceprint biometric identifiers or biometric information;

f. Whether Defendant unlawfully profited from its collection of Illinois residents' voiceprint biometrics;

g. Whether Defendant made available to the public a written policy that establishes a retention schedule and guidelines for destroying biometrics compliant with BIPA's requirements;

h. Whether Defendant's conduct violates BIPA;

i. Whether Defendant's BIPA violations are willful or reckless; and

17

j.      Whether Plaintiffs and the other members of the Classes are entitled to damages and injunctive relief.

81.      Absent a class action, most members of the Classes would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

82.      Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Classes they seek to represent. Plaintiffs have both retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Classes.

83.      Defendant has acted and failed to act on grounds generally applicable to the Plaintiffs and the other members of the Classes, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of both the Classes and making injunctive or corresponding declaratory relief appropriate for the Classes as a whole, respectively.

**<u>COUNT I</u>**
**Violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15/(b)**
**(On behalf of Plaintiffs and the Classes)**

84.      Plaintiffs incorporate the forgoing allegations by reference as though fully set forth.

85.      Defendant is a private entity subject to BIPA. 740 ILCS 14/10.

86.     BIPA requires a private entity, such as Defendant, to obtain informed written consent from individuals before acquiring their biometric information. Specifically, BIPA makes it unlawful to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of for which a biometric identifier or biometric information is being captured, collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . ." 740 ILCS 14/15(b).

87.     Defendant does not implement any procedures to obtain written consent from individuals who interact, voluntarily or without knowledge, with its Nuance Security Suite and IVR software, or even inform them that Defendant is the entity that operates the Nuance Security Suite and IVR services that they interact with and how long their biometrics would be maintained.

88.     As such, each instance when Plaintiffs and the other members of the Classes interacted with Defendant's Security Suite and IVR services in Illinois, Defendant captured, collected, stored, and/or used Plaintiffs and the other members of the Classes' voiceprint biometrics without valid consent and without complying with and, thus, in violation of Section 15(b) of BIPA.

89.     BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA. 740 ILCS 14/20(1)–(2).

90.     Defendant's violations of BIPA, a statute that has been in effect since 2008, were knowing and willful, or were at least in reckless disregard of the statutory requirements, given that

that it knew that its Security Suite and IVR services would be used to screen and/or authenticate interactions with thousands of Illinois residents and would be subject to the provisions of BIPA yet failed to comply with the statute.

91.    Alternatively, Defendant negligently failed to comply with BIPA.

92.    Accordingly, with respect to Count I, Plaintiffs, individually and on behalf of the proposed Classes, pray for the relief set forth below.

### COUNT II
### Violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(d)
### (On behalf of Plaintiffs and the Classes)

93.    Plaintiffs incorporate the forgoing allegations by reference as though fully set forth.

94.    Defendant is a private entity subject to BIPA. 740 ILCS 14/10.

95.    As discussed above, Plaintiffs and the other members of the Classes have had their "biometric identifiers," namely their voiceprints and unique data derived therefrom, *i.e.,* "biometric information," collected, obtained, stored, and thus possessed by Defendant when they interacted with Defendant's clients that purchased and implemented its Nuance Security Suite and IVR services within Illinois.

96.    Section 15(d) of BIPA prohibits any private entity in possession of biometrics, such as Defendant, from disclosing, redisclosing, or otherwise disseminating an individual's biometric identifiers or biometric information without that individual's consent. 740 ILCS 14/15(d).

97.    Defendant has disclosed or otherwise disseminated the biometrics of Plaintiffs and the other members of the Classes to third party companies. Specifically, Defendant's Nuance Security Suite and IVR services rely on the dissemination of biometrics to third parties, such as

data storage vendors, clients, and/or cloud service providers to enable the remote, automated operation of its biometric verification features.

98.     Defendant never obtained Plaintiffs or the other members of the Classes' consent to disclose or disseminate their biometrics to such third parties.

99.     Accordingly, Defendant has violated Section 15(d) of BIPA.

100.    Defendant knew, or was reckless in not knowing, that by disclosing or disseminating the biometrics of numerous Illinois residents as alleged above, it would be subject to Section 15(d) of BIPA, a statutory provision enacted in 2008.

101.    BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA. 740 ILCS 14/20(1)-(2).

102.    Defendant's violations of Section 15(d) of BIPA, a statutory provision that has been in effect since 2008, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendant negligently failed to comply with Section 15(d) of BIPA.

103.    Accordingly, with respect to Count II, Plaintiffs, individually and on behalf of the proposed Classes, pray for the relief set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Classes, respectfully request that this Court enter an Order:

> a.   Certifying the IVR and Nuance Security Suite Class as defined above, appointing Plaintiffs as class representatives, and the undersigned as class counsel;
>
> b.   Declaring that Defendant's actions, as set forth herein, violate BIPA;

c.   Awarding injunctive and equitable relief as necessary to protect the interests of Plaintiffs and the other members of the Classes by requiring Defendant to comply with BIPA;

d.   Awarding statutory damages of $5,000 for each willful and/or reckless violation of the BIPA, pursuant to 740 ILCS 14/20(2);

e.   Awarding statutory damages of $1,000 for each negligent violation of the BIPA, pursuant to 740 ILCS 14/20(1);

f.   Awarding reasonable attorneys' fees, costs, and other litigation expenses, pursuant to 740 ILCS 14/20(3);

g.   Awarding pre- and post-judgment interest, as allowable by law; and

h.   Awarding such further and other relief as the Court deems just and equitable.

**JURY DEMAND**

Plaintiffs request a trial by jury of all claims that can be so tried.

Dated: July 24, 2024                    Respectfully Submitted,

                                        MICHELLE CAMPANA & CHERAL HOLLIS,
                                        both individually and on behalf of the classes of
                                        similarly situated individuals


                                        By:     /s/ *Eugene Y. Turin*
                                                *One of Plaintiffs' Attorneys*

Eugene Y. Turin
Colin P. Buscarini
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
cbuscarini@mcgpc.com

*Attorneys for Plaintiffs and the Putative Classes*